Filed 3/6/13  P. v. Camarena CA4/3
Opinion following recall of remittitur

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE LUIS CAMARENA,<br><br>    Defendant and Appellant. | G043978<br><br>(Super. Ct. No. 09CF0921)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judge.  Affirmed in part, reversed in part, and remanded for resentencing.

Kristin A. Erickson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Anthony DaSilva and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

In our prior nonpublished case, *People v. Camarena* (Oct. 24, 2011, G043978), we affirmed Camarena's convictions for possession of a firearm by a felon, street terrorism, possession of a controlled substance with a firearm, and possession of ammunition by a prohibited person. However, we reversed the jury's findings he committed possession of a firearm by a felon and possession of ammunition by a prohibited person for the benefit of a criminal street gang based on insufficiency of the evidence. We remanded the matter for resentencing.

In *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), the California Supreme Court recently interpreted Penal Code section 186.22, subdivision (a), and clarified that a defendant who acts alone cannot be convicted of the substantive offense of street terrorism. This was one of the grounds on which Camarena attacked his street terrorism conviction in our prior nonpublished case. He also argued the prosecutor committed misconduct and he was entitled to additional presentence custody credits.

In January 2013, relying on *People v. Mutch* (1971) 4 Cal.3d 389 [recall of remittitur adjunct to writ of habeas corpus and proper to implement defendant's right to habeas corpus where defendant convicted under statute that did not prohibit his conduct at the time], Camarena's appellate counsel and the Attorney General filed an application and stipulation requesting we recall the remittitur, vacate our prior opinion, and issue a new opinion, wherein we reverse Camarena's conviction for street terrorism. Under these circumstances, we grant the motion as Camarena stands convicted and sentenced under an invalid theory of street terrorism. We shall recall the remittitur, vacate our prior opinion, order that a new remittitur issue that reverses the street terrorism conviction and enhancements and affirms Camarena's remaining convictions, and remand the matter to the trial court for resentencing. Although we conclude that on resentencing the court should revisit the issue of his presentence custody credits, Camarena's remaining claim, that the prosecutor committed misconduct, has no merit. We affirm in part, reverse in part, and remand the matter for resentencing.

2

FACTS

About 5:00 p.m. one evening in April 2009, Officers Jorge Lopez and John Rodriguez were on patrol on 17th Street in Santa Ana. They pulled over Camarena, who was driving a truck with loud music emanating from inside the truck. When they approached the truck, Lopez saw .22 caliber ammunition on the rear passenger side seat. Lopez asked Camarena about the ammunition, and Camarena replied he had recently placed it there. The officers searched the truck and found a loaded Colt Derringer on the rear driver's side floorboard. They also found additional ammunition in a bag on the front driver's side floorboard. Finally, they found what was later determined to be 34 milligrams of methamphetamine. The officers determined the legal owner of the Colt Derringer reported the gun stolen the previous month. Lopez arrested Camarena and advised him of his *Miranda*[1] rights. His head was shaved, and he had the following tattoos: a fly on his hand, "714" on his head, and "Santana" on the back of his neck.

Camarena admitted the gun, ammunition, and drugs were his. Camarena told Lopez he bought the gun from a friend for $100 about two or three weeks earlier. Camarena stated he bought the gun for protection and knew it worked because he fired it into the air. When Lopez asked him whether he had enemies, Camarena replied he did not have any enemies, but stated "people [are] crazy out there." As to the methamphetamine, Camarena stated he did not realize there were drugs still in the car as he thought he had used it all. He explained he recently began using methamphetamine again because of the death of his unborn child. He admitted to being "a documented Santa Nita gang member." He did not tell Lopez that he had left the gang.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

A second amended information charged Camarena with possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1))[2] (count 1), street terrorism (§ 186.22, subd. (a)) (count 2), possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a)) (count 3), and possession of ammunition by a prohibited person (§ 12316, subd. (b)(1)) (count 4). The second amended information alleged he committed counts 1, 3, and 4 for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The second amended information also alleged he suffered four prior convictions resulting in prison terms and that he had not remained free of custody (§ 667.5, subd. (b)).

At trial, the prosecutor offered the testimony of Officer Gil Hernandez, an expert in criminal street gangs. After detailing his background, training, and experience, Hernandez testified concerning the culture and habits of traditional, turf-oriented Hispanic criminal street gangs, including the importance of respect, the significance of guns and violence, and how to join and quit a gang. Hernandez explained when a gang member possesses a gun, the gun belongs to the gang and gang members pass the gun to other gang members. After explaining how a person joins a gang, Hernandez testified concerning how one quits a gang. He explained a person would "no longer participate[] in the activities, no longer commit the crimes that are typical of gang members, they move out of the area completely where they have no contact with these gang members . . . ."

Hernandez opined Santa Nita was a criminal street gang as statutorily defined. He testified concerning the predicate offenses involving Santa Nita gang member Elias Arturo Diaz on August 31, 2007, for taking and driving a stolen automobile and street terrorism, and Santa Nita gang member Jonathan Gabriel Martinez on May 18, 2007, for unlawful automobile taking and street terrorism. He described its

---

[2]     All further statutory references are to the Penal Code, unless otherwise indicated.

4

founding and explained Santa Nita had at least 50 members, they have a common name and symbol (S.N., S.N.R., or S.N. 13), they wear the color baby blue, and their primary activities are possession of firearms and robberies. Hernandez did not testify concerning Santa Nita's boundaries but outlined on a map the area depicting its boundaries.

Hernandez opined Camarena was an active participant in Santa Nita at the time of the offenses based on Street Terrorism Enforcement and Prevention Act (STEP) notices[3] and the circumstances of the offense. He stated Camarena received STEP notices on July 7, 2007, and January 17, 2009. With respect to the 2007 notice, he stated Camarena had "714" and "Santana" tattoos, which based on his experience demonstrates he is from an Orange County, Santa Ana gang. Camarena also told the officer he "walked into the Santa Nita gang." However, Camarena told the officer he was not "active." Camarena added he was a "Southsider" in prison. As to the 2009 notice, he stated Camarena told the officer his gang moniker, or nickname, was "'Mosca,'" which means fly, and he had a tattoo of a fly on his hand. Camarena initially claimed Santa Nita, but later added "it was a long time ago[.]" Hernandez stated the fact Camarena possessed a gun, which was one of Santa Nita's primary activities, and that he told Lopez people were after him, were factors he relied on in forming his opinion even though Camarena was not in Santa Nita claimed gang territory at the time of the offenses. He explained gang members recently have begun denying gang membership because of the increased sentencing penalties.

---

[3] Hernandez explained a STEP notice is a document a police officer uses to record a contact with a possible gang member. The STEP notice includes the details of the contact and the person's physical characteristics. The STEP document also notifies the person that the gang the person is affiliating with is a criminal street gang and notifies the recipient the gang commits certain crimes.

Finally, the prosecutor asked Hernandez the following question: "Hypothetically speaking, assume you have a situation where you have an active participant in the Santa Nita criminal street gang who is contacted in Santa Ana, not in his gang's territory, but in Santa Ana, and he's in possession of a loaded stolen firearm. [¶] How, if at all, does that benefit, further, or promote felonious conduct by members of that gang?"

Hernandez responded: "It promotes or benefits the members of the gang in several ways. One, if the member commits a crime, such as a robbery or carjacking or just even pointing the gun at somebody and asking them where they're from, other gangs and other gang neighborhoods become aware of the incidents and it adds to the reputation of that gang as a gang that won't hesitate to use a firearm, will be violent if they need to, and that they have firearms at their disposal. . . . [¶] Secondly, the fact that the person is outside of their neighborhood and they're armed with a – a firearm tells me that they don't feel comfortable when they're outside of the neighborhood, that they need to be ready for some type of confrontation with the firearm."

On cross-examination, Hernandez admitted that during the 2007 contact, Camarena was alone, admitted he "walked in" Santa Nita when he was 15 years old (approximately 14 years prior) but denied being an active gang member, was not in Santa Nita claimed territory, and gave the officer an address in Costa Mesa as his residence. He also conceded that during the January 2009 contact, which was not in Santa Nita claimed territory, Camarena was with someone but there was no evidence that person was a gang member, and Camarena stated he was in a gang "a long time ago[.]" Defense counsel also briefly questioned Hernandez concerning a March 2009 contact where Camarena was alone outside Santa Nita claimed territory. Hernandez testified there was no evidence Camarena had any tattoos depicting Santa Nita's signs or symbols. Hernandez testified Camarena was arrested in Santa Nita claimed territory in 1999 in a stolen vehicle but he admitted there were no gang allegations in that case. He admitted that although he

6

had patrolled Santa Nita claimed territory every day, he had never contacted Camarena. He also admitted Camarena had never been charged with a gang offense before the current case. Hernandez acknowledged Camarena admitted to Lopez he carried a gun because he was fearful, and he admitted his fear could have stemmed from the fact he left the Santa Nita gang and they were after him.

Camarena offered the testimony of Jimmy Cha. Cha testified he is a licensed California attorney who was incarcerated from 1996 to 2000. Cha testified concerning prison politics and how race and geography largely determine an inmate's daily life. He stated most inmates have tattoos whether they are in a gang or not.

In rebuttal, the prosecutor recalled Hernandez. Hernandez testified there was a gang injunction against Santa Nita. He stated Camarena is listed on the Santa Nita gang injunction, but he has not been served with the injunction.

During closing argument the prosecutor argued: "All right. So gang detective's opinion. The jury is to consider the gang detective's opinion. What weight you want to give it is up to you. Now, he stated his reasons for the opinion. Because what we -- what you do is you put on the expert, who has an opinion, and that's how you prove these cases. [¶] If he just said to you, 'in my opinion, the defendant is an active participant in the gang,' and we didn't ask him why he thought that, then you wouldn't be able to evaluate his opinion. You wouldn't know what kind of weight to give his opinion. That's why we went into all the details about defendant's background, the tattoos, the contacts, the prison, all that stuff. That's for you to evaluate his opinion. [¶] So consider the reasons he gave for his opinion. Consider the totality of the circumstances. Again, including this crime, the primary activity of Santa Nita. Consider the reliability of his opinion. And consider this: why would he opine the defendant is an active participant if he didn't believe it? [¶] Now, I know there's some people who think, well, you know, these cops, these gang cops are just hard chargers. Well, they don't have the time in Santa Ana, or the incentive, to prosecute nongang members for

7

gang crimes. In Santa Ana, they've got their hands full, as we all know. So essentially he's not going to say it unless he believes it. [¶] So again, the only way to prove gang charges is through a gang expert's testimony. You can't get there. That's the only way to prove it, and that's why we put him on. [¶] So simplified for you is if you believe . . . Hernandez, then you convict [Camarena] of the gang charges. If you don't believe . . . Hernandez, then acquit [Camarena] of the gang charges. It's that simple."

During rebuttal, the prosecutor argued: "All right. Here's the bottom line: it's unreasonable to acquit. If we say that this defendant is not guilty of the gang charges, then basically what we're saying is the gang participants who are caught with firearms, all they have to do is deny gang affiliation, challenge the gang affiliation, okay, and they'll never be convicted of any gang crimes. That's contrary to the law, that's contrary to common sense, and that's contrary to an orderly society."

The jury convicted Camarena of all counts and found true the street terrorism enhancement as to counts 1 and 4, but not as to count 3. After Camarena admitted he suffered two prior convictions, the trial court, upon the prosecutor's motion, dismissed the other two prior conviction allegations. The trial court sentenced Camarena to prison for eight years as follows: the upper term of three years on count 1 plus a consecutive three-year term for its accompanying street terrorism enhancement; and consecutive one-year terms on each of the prior convictions. The court awarded Camarena 260 days of actual credit and 130 days of local conduct credit for a total of 390 days of presentence custody credits.

## DISCUSSION

### I. Sufficiency of the Evidence

"In considering a challenge to the sufficiency of the evidence . . . , [the appellate court] review[s] the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the

8

defendant guilty beyond a reasonable doubt.  [Citation.]  [It] presume[s] every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'  [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60 (*Albillar*).)

A.  *Street Terrorism Substantive Offense-Count 2*

Camarena contends there was no evidence supporting any of the elements of section 186.22, subdivision (a).  Because we agree Camarena, who acted alone, could not be convicted of committing street terrorism, we need not address his other contentions.

The street terrorism substantive offense, section 186.22, subdivision (a), states:  "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished . . . in the state prison for 16 months, or two or three years."  There are three elements to the substantive street terrorism offense:  (1) active participation in a criminal street gang; (2) knowledge the gang's members have engaged in a pattern of criminal gang activity; and (3) willfully promoting, furthering, or assisting in any felonious criminal conduct by members of the gang.  (*Albillar, supra,* 51 Cal.4th at p. 56.)

In *Rodriguez, supra,* 55 Cal.4th at page 1128, defendant acted alone in committing an attempted robbery.  A jury convicted him of attempted robbery and active participation in a criminal street gang under section 186.22, subdivision (a).  (*Rodriguez, supra,* 55 Cal.4th at p. 1129.)  The issue in *Rodriguez*, like the issue Camarena raises here, was whether the third element of the crime described in section 186.22,

9

subdivision (a)—willfully promoting, furthering, or assisting in any felonious criminal conduct by members of the defendant's gang—can be satisfied by felonious criminal conduct committed by the defendant acting alone. (*Rodriguez, supra,* 55 Cal.4th at p. 1129.) The court held that it does not, and expressly disapproved of prior cases to the extent they are inconsistent with *Rodriguez.* (*Rodriguez, supra,* 55 Cal.4th at p. 1137, fn. 8.)

The *Rodriguez* court began by analyzing the statute according to its "'plain, commonsense meaning.'" (*Rodriguez, supra,* 55 Cal.4th at p. 1131.) The felonious criminal conduct referred to in the statute must be committed "'by members of that gang.'" (*Rodriguez, supra,* 55 Cal.4th at p. 1131.) The word "'[m]embers,'" the court explained, is a plural noun. (*Id.* at p. 1132.) Therefore, the court reasoned "[t]he plain meaning of section 186.22[, subdivision] (a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member. [Citation.]" (*Ibid*.) Because the defendant acted alone, he did not violate section 186.22, subdivision (a). (*Rodriguez, supra,* 55 Cal.4th at p. 1139.)

*Rodriguez* controls the outcome of the issue here. Because Camarena acted alone in committing his crimes—the only crimes the prosecution relied on to support the third element of the gang participation count—there is insufficient evidence to support the conviction on that count. Accordingly, we will reverse the conviction on count 2.

B. *Street Terrorism Enhancement-Counts 1 and 4*

Camarena asserts insufficient evidence supports the jury's findings he committed counts 1 and 4 for the benefit of a criminal street gang. He contends there was no evidence he committed the offenses: (1) "for the benefit of, at the direction of, or in association with any criminal street gang"; and (2) "with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." We agree.

"[A]ny person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished . . . ." (§ 186.22, subd. (b)(1).)

Section 186.22, subdivision (b)(1), does not criminalize mere gang membership. (*In re Frank S.* (2006) 141 Cal.App.4th 1192, 1196.) As clarified by *Albillar, supra,* 51 Cal.4th at page 60, although not every crime committed by gang members is related to a gang for purposes of the first prong, a crime can satisfy the first prong when it is committed in association with the gang, or when it is committed for the benefit of the gang. The *Albillar* court also explained the second prong, which required the defendant commit the gang-related felony "with the specific intent to promote, further, or assist in any criminal conduct by gang members" (§ 186.22, subd. (b)(1)), need not encompass proof the defendant committed the crime with the specific intent to promote, further, or assist other criminal conduct by gang members. Instead, that subdivision "encompasses the specific intent to promote, further, or assist in *any* criminal conduct by gang members—including the current offenses—and not merely *other* criminal conduct by gang members." (*Albillar, supra,* 51 Cal.4th at pp. 64–65.) The *Albillar* court stated a gang expert's opinion is admissible *as part of* the evidentiary showing on how the crimes can benefit the gang. (*Id.* at pp. 63–64.)

However, "[a] gang expert's testimony alone is insufficient to find an offense gang related. [Citation.] '[T]he record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a finding that the *crime* was committed for the benefit of, at the direction of, or in association with a criminal street gang.' [Citation.]" (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 657 (*Ochoa*).)

11

*Ochoa, supra,* 179 Cal.App.4th 650, is instructive. In that case, the jury convicted defendant of carjacking and found he committed the act for the benefit of a gang. (*Id.* at p. 652.) The evidence at trial demonstrated the victim was sitting in a parked car when defendant approached, pulled a shotgun out of his jacket, pointed it at the victim's face and told the victim to give him the vehicle. Defendant got into the vehicle and drove away. (*Id.* at p. 653.) Officers testified defendant had previously identified himself to law enforcement as a member of a gang and had gang tattoos on his back and wrist. (*Id.* at p. 654.) A gang expert opined defendant committed the carjacking for the benefit of his gang. The expert concluded the carjacking would benefit the gang by "providing general transportation to the gang's members, by enabling transportation of narcotics for sale by the gang, by enabling transportation to commit further crimes by the gang, by providing economic benefit to the gang by sale of the vehicle, by elevating defendant's status within the gang, and by raising the gang's reputation in the community." (*Id.* at pp. 655-656.)

The *Ochoa* court ruled there was insufficient evidence to support a gang enhancement. (*Ochoa, supra,* 179 Cal.App.4th at p. 661.) In doing so, the court explained defendant was alone, "did not call out a gang name, display gang signs, wear gang clothing, or engage in gang graffiti while committing the instant offenses." (*Id.* at p. 662.) The court stated there was no evidence the crimes were committed in defendant's claimed gang territory or the territory of any of its rivals. The court reasoned the gang expert had no specific evidentiary support for making such inferences. The court went on to conclude that the expert's testimony purely speculative. (*Id.* at pp. 662-663.)

Here, the evidence portrayed in the light most favorable to the judgment, and importantly the only evidence the Attorney General cites to concerning the street terrorism enhancement, consists of the following: Camarena, a self-proclaimed

12

documented Santa Nita gang member, possessed a gun and ammunition outside of Santa Nita territory. Hernandez opined gun possession was one of Santa Nita's primary activities, and when a gang member possesses a gun the gun belongs to the entire gang. Hernandez testified possession of the gun benefits felonious conduct by gang members because if the gang member uses the gun and other gangs learn the gang member used a gun, the gang member who used the gun will increase his and his gang's reputation. He added gang members use weapons to impose their will on others. He also explained the gang member does not feel safe outside his claimed territory.

There was no evidentiary support for Hernandez's opinions and thus his testimony was too speculative. It was undisputed Hernandez was alone outside claimed Santa Nita gang territory with a loaded gun. There were no other Santa Nita gang members in his company. Although Hernandez opined this tended to establish Camarena was fearful outside his gang's claimed territory, there was no evidence concerning which gang's territory he was in, if any, whether that gang was a Santa Nita rival, or whether there was a specific gang dispute that made Camarena fearful to the point he expected trouble. There was no evidence Camarena was wearing Santa Nita gang colors, displayed gang signs, or claimed Santa Nita membership. The only evidence supporting the gang enhancements was Hernandez's opinion, and this was insufficient. Therefore, we reverse the jury's findings Camarena committed counts 1 and 4 for the benefit of a criminal street gang.

## II. *Prosecutorial Misconduct*

Camarena claims the prosecutor committed misconduct during closing argument when he misstated the law and vouched for the expert gang witness. Conceding his defense counsel did not object to the alleged errors, or request an admonition, Camarena alternatively, asserts his defense counsel was ineffective. The

13

Attorney General responds Camarena forfeited appellate review of the issue, the prosecutor did not commit misconduct, and he was not prejudiced by any error. As we explain below, we conclude the prosecutor did not commit misconduct.

## A. *Forfeiture*

"'In order to preserve a claim of [prosecutorial] misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for review. [Citation.]' [Citation.]" (*People v. Parson* (2008) 44 Cal.4th 332, 359.) Here, Camarena's defense counsel did not object to the prosecutor's statements and request an admonition, and therefore, his claims are forfeited. However, he also asserts his defense counsel was prejudicially ineffective. We will address Camarena's claims within that context.

## B. *Ineffective Assistance of Counsel*

"In order to establish a violation of the right to effective assistance of counsel, a defendant must show that counsel's performance was inadequate when measured against the standard of a reasonably competent attorney, and that counsel's performance prejudiced defendant's case in such a manner that his representation 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' [Citations.] Moreover, 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.' [Citation.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.] If defendant fails to show that he was prejudiced by counsel's performance, we may reject his ineffective assistance claim without determining whether counsel's performance was inadequate. [Citation.]" (*People v. Sanchez* (1995) 12 Cal.4th 1, 40-41, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

14

Camarena complains the prosecutor committed misconduct in essentially two respects: by arguing the only way to prove gang charges is through expert testimony; and by arguing Hernandez was so busy investigating crimes in Santa Ana, he must truly believe his own testimony.

"A prosecutor's misconduct violates the Fourteenth Amendment to the federal Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.] A prosecutor's misconduct 'that does not render a criminal trial fundamentally unfair' violates California law 'only if it involves "'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'"' [Citations.]" (*People v. Harrison* (2005) 35 Cal.4th 208, 242.)

We cannot say the prosecutor's isolated comments infected the trial with such unfairness as to deny Camarena due process. Nor were his comments deceptive or reprehensible. Although it is true there is other evidence a prosecutor may rely on to prove gang charges, it is undeniable that in nearly all gang cases a gang expert testifies on behalf of the prosecution to help explain the culture, habit, and customs of criminal street gangs. In gang cases, there is often times other evidence of gang indicia, but a gang expert generally testifies to assist a jury in evaluating the significance of the gang evidence.

And although a prosecutor may not suggest matters outside the record to establish the veracity of a witness (*People v. Woods* (2006) 146 Cal.App.4th 106, 113), a prosecutor may state matters not in evidence that are common knowledge or are illustrations drawn from common experience (*People v. Stanley* (2006) 39 Cal.4th 913, 951-952). It is common knowledge with shrinking government budgets law enforcement agencies are stretched to the breaking point in investigating crimes. We interpret the

15

prosecutor's comment as assuring the jury Hernandez truly believed his own testimony otherwise he would not have taken the time to come to court to testify. The prosecutor also repeatedly informed the jury it must evaluate Hernandez's testimony and give it the weight the jury thought it deserved. The prosecutor also told the jury it could disregard his testimony if the jury found it unbelievable.

Finally, a prosecutor is permitted to describe defense counsel's interpretation of the evidence, and deficiencies in defense counsel's tactics. (*People v. Bemore* (2000) 22 Cal.4th 809, 846.) Here, the prosecutor was permitted to rebut Camarena's defense counsel's argument he was innocent of the gang charges by asserting defense counsel's claims were unreasonable. Therefore, based on the prosecutor's isolated statements, we cannot say defense counsel provided ineffective assistance of counsel in failing to object to the statements.

*III. Presentence Custody Credit*

Camarena contends that if we reverse his conviction for street terrorism or the street terrorism enhancements, we must award him additional presentence custody credits. At trial, defense counsel informed the trial court Camarena had 260 days of actual credit. Based on our review of the record, Camarena was arrested on April 9, 2009, and the trial court sentenced him on May 28, 2010, assuming he remained in custody during the entire period. Based on our calculations, Camarena earned 414 days of actual credit. Because we reverse Camarena's conviction for street terrorism and the jury's findings on the street terrorism enhancements and resentencing is required, we invite the trial court to revisit the issue of Camarena's presentence custody credits.

## DISPOSITION

The application and stipulation to recall the remittitur is granted. We recall the remittitur, vacate our prior opinion, and order that a new remittitur issue that reverses

16

the street terrorism conviction and street terrorism enhancements and affirms Camarena's remaining convictions.  We remand the matter to the trial court for resentencing.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


MOORE, J.