Filed 9/18/13  P. v. Bolen CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

THE PEOPLE,

    Plaintiff and Respondent,

    v.

JOSHUA EUGENE BOLEN,

    Defendant and Appellant.

_____/

A135545

(Del Norte County
Super. Ct. Nos.
CRF119292, CRF129057

Law enforcement officers found suspected methamphetamine and approximately six "white oval shaped pills" in a car appellant Joshua Eugene Bolen was driving.  The People charged him with various crimes, including possession of methadone (Health & Saf. Code, § 11350).  At trial — and over appellant's objection — the court permitted a Walgreen's pharmacist to testify the pills were methadone.  The pharmacist testified he entered the imprint on the pills into a program used by Walgreen's called "facts and comparisons" and the program generated the chemical composition of the pills: methadone.  The pharmacist also testified the picture of the methadone pills in the program was identical to the pills found by law enforcement officers.  A jury convicted appellant of various crimes, including possession of methadone, and sentenced him to state prison.

1

On appeal, appellant contends the pharmacist's testimony was not "appropriate expert opinion" because it was not helpful to the jury and because the pharmacist's opinion was not "of a type that would reasonably be relied on . . . to establish the chemical composition of a purported prescription drug" under Evidence Code section 801.[1] Appellant also argues the prosecutor committed misconduct during closing argument by "shifting the burden of proof."

We affirm. We conclude the trial court did not abuse its discretion by admitting the pharmacist's testimony. We also conclude the prosecutor did not commit misconduct.

FACTUAL AND PROCEDURAL BACKGROUND

We summarize the facts as germane to appellant's claim regarding his conviction for possessing methadone (Health & Saf. Code, § 11350) and his claim regarding prosecutorial misconduct.

*The Incident*

In January 2011, parole agent Caleb Chadwick was looking for appellant, a parolee Chadwick supervised. Chadwick parked his car in the Fort Dick Market in Crescent City. As Chadwick sat in the driver's seat, writing notes, he saw "movement in the corner of [his] eye" and heard someone say, "'Oh shit.'" Chadwick looked up and saw appellant in the driver's seat of a Jeep Cherokee; he told appellant to stay in the car, but appellant "got out of the car and took off running." Chadwick ran after appellant but could not catch him.

As Chadwick walked back to his car, he saw the Jeep Cherokee near the Sea West restaurant. A woman — later identified as Andrea Hupp — was in the front seat. Chadwick ordered Hupp to get out of the car and she complied; Chadwick then searched the car and found a police scanner and a black men's jacket in the center console. Chadwick had seen appellant wearing the jacket and noticed it smelled of cologne appellant wore.

---

[1] Unless otherwise noted, all further statutory references are to the Evidence Code.

As Chadwick searched the jacket, he and another law enforcement officer saw a bag fall out of the jacket. Inside the bag were five smaller bags containing suspected methamphetamine and one bag containing approximately six "white oval shaped pills." Chemical testing confirmed the five bags contained methamphetamine.

*The Pharmacist's Testimony*

At trial, the prosecution called Walgreen's pharmacist Brian Greenough to identify the pills. A licensed pharmacist, Greenough had worked in the field for 32 years, most of that time as a pharmacy manager. Greenough testified he is able to identify prescription pills given his extensive experience as a pharmacist. He testified the pills "are Methadone, 10 milligram." At that point, defense counsel objected, claiming "[i]mproper foundation has been made. He simply said these are Methadone without detailing how he came to that conclusion." Counsel also objected to the testimony on the grounds it "requires multiple levels of hearsay[.]" As counsel explained, "if [the People] are solely relying on [Greenough] opening up a book and looking at codes, that's also relied upon multiple levels of hearsay and somebody else's work in identifying tablets because this substance has not actually been tested by anybody. So I don't know if it's actually what it purports to be." The court overruled the objections, concluding there was "plenty of foundation. He's been a pharmacist . . . for 32 years. He has training in being able to recognize particular tablets. And [he] says he looked at them [and] they're Methadone. . . . I think there's been sufficient foundation laid."

Greenough testified he did not chemically test the pills. On cross-examination, he stated, "I looked it up on the program that I have at my work, and the imprints on the pills identify them as Methadone 10." On redirect, Greenough explained he used "facts and comparisons," a program "we have at our work" where the pharmacist puts "the imprint of . . . each drug in the program, [and] it comes up with the name of the medication." Greenough also printed out a picture of the methadone pills and testified the picture was identical to the pills found on the day of the incident. Nothing about the methadone pills suggested they were counterfeit. On recross-examination, Greenough stated: "I don't do

drug testing. I dispense medications, and I can usually identify them if somebody shows them to me."

*Closing Argument*

During his initial closing argument, the prosecutor stated, "[Y]ou'll probably hear about Andrea Hupp. Someone is probably going to try to make Andrea Hupp the fall girl here. Where is Andrea Hupp? You didn't see her up here. If she existed and she was going to be an alibi witness for this gentleman, where is she? She would not necessarily have had to have taken the fall and say it was mine." Defense counsel objected, noting, "it's the People's burden of proof, not the defense." The court sustained the objection and the prosecutor argued the fact that Hupp might have driven the car was immaterial because "[t]he fact that that drug was moved at all and attributably in the presence of Mr. Bolen satisfies that charge [transporting methodone]."

During his closing argument, defense counsel reminded the jury that the People had the burden to prove each element of the charged crimes beyond a reasonable doubt. Defense counsel claimed it was reasonable that Hupp — appellant's girlfriend — drove the car to the market, not appellant, and that "she's guilty of transportation," not appellant. Counsel also repeatedly argued Hupp possessed the drugs, not appellant, stating: "Ms. Hupp is just as likely to have had it in her possession and slid it over there" and "[i]t's just as likely Ms. Hupp had this [the drugs] and tried to slide this over into the jacket on the center console between . . . both seats and then drove off to Sea West. My client is clearly not guilty of that [possession of methamphetamine]."

Defense counsel also stated, "[t]his case is solely centered around the situation where Ms. Hupp could easily, conceivably, reasonably and justifiably have concealed this from Mr. Bolen and been the culprit." Additionally, counsel demonstrated how Hupp could have driven the car to the market, used the police scanner, and concealed the drugs in the jacket. Finally, defense counsel argued the methadone pills could be counterfeit because "there was no actual test done. None. . . . They could have tested it, but no. Is it a knock-off? Is [it] actually Methadone? . . . [I]t was never tested. . . . It's their burden of proof to actually test the substance."

4

On rebuttal, the prosecutor described the strategy of laying "everything . . . on top of Ms. Hupp" as a "huge red herring." He also stated, "[a]nd despite the red herring of where you want to take Ms. Hupp and throw her under the bus, again, I am allowed to comment on the fact that when [defense counsel] is trying to tell you, a lot of this stuff, he had the opportunity to test that Methadone to see if it was a knock-off." Defense counsel objected, "[i]nappropriate argument" and the court sustained the objection.

*Verdict and Sentencing*

The jury convicted appellant of: (1) transportation of methamphetamine (Health & Saf. Code, § 11379); (2) possession of methamphetamine (Health & Saf. Code, § 11377); and (3) possession of methadone (Health & Saf. Code, § 11350). It did not reach a verdict on the charges for possession of methamphetamine for sale (Health & Saf. Code, § 11378). Appellant admitted the prior conviction allegations and the court sentenced him to state prison.[2]

DISCUSSION

I.

*The Court Did Not Abuse its Discretion by Admitting Greenough's Testimony Identifying the Pills as Methadone*

Appellant claims the court erred by admitting Greenough's testimony identifying the seized pills as methadone because the testimony did not "assist the jury."[3] The rules regarding the admissibility of expert testimony are well-settled. Expert testimony is admissible if it relates "to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact" and the opinion is "[b]ased on

---

[2] Appellant was charged in a separate case, Del Norte County Superior Court case No. CRF 12-9057, with criminal threats (Pen. Code, § 422) and withdrawing and exhibiting a firearm in a threatening manner (Pen. Code, § 417, subd. (a)(2)). The court sentenced appellant on both cases at the same hearing. Appellant appealed from both cases but raises no argument regarding case No. CRF12-9057.

[3] The People do not argue defense counsel's "foundation" argument was insufficiently specific under section 353 to preserve appellant's claims on appeal. (See *People v. Riccardi* (2012) 54 Cal.4th 758, 814, fn. 27 [observing it was "questionable" whether defendant preserved evidentiary objections on appeal but considering the merits because "[t]he Attorney General . . . does not argue forfeiture"].)

matter . . . of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates[.]" (§ 801, subd. (a), (b).) "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of the fact." (§ 805.) We review a court's decision to admit expert testimony for abuse of discretion. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*); *People v. Lindberg* (2008) 45 Cal.4th 1, 45 (*Lindberg*).)

Health and Safety Code section 11350, subdivision (a) makes it a felony to possess a controlled substance, including methadone. Although chemical test results are routinely introduced at trial to establish the illegal nature of a controlled substance, they are not required. "[T]he nature of a substance, like any other fact in a criminal case, may be proved by circumstantial evidence. [Citations.] It may be proved, for example, by evidence that the substance was a part of a larger quantity which was chemically analyzed [citations], by the expert opinion of the arresting officer [citation], and by the conduct of the defendant indicating consciousness of guilt. [Citation.]" (*People v. Sonleitner* (1986) 183 Cal.App.3d 364, 369 (*Sonleitner*); see also *People v. Davis* (2013) 303 P.3d 1179, 1181 [expert testimony on MDMA's "chemical composition" or its "effects on the user" may be used to establish possession of a controlled substance]; *U.S. v. Schrock* (6th Cir. 1988) 855 F.2d 327, 334 (*Schrock*) [federal courts do not require "scientific identification of a substance [as an] absolute prerequisite to conviction for a drug-related offense"]; *U.S. v. Walters* (1st Cir. 1990) 904 F.2d 765, 770 [same].)

California courts permit the introduction of expert testimony to prove the nature of a controlled substance. (*Sonleitner, supra,* 183 Cal.App.3d at p. 370; *People v. Marinos* (1968) 260 Cal.App.2d 735, 738 (*Marinos*).) For example, in *Sonleitner*, the Second District Court of Appeal upheld a cocaine possession conviction based in part on the arresting officer's expert opinion that the substance was cocaine. As the *Sonleitner* court explained, the officer "had seen cocaine thousands of times in his 10 years' experience as a narcotics officer, and he testified that he could observe the white crystalline character of the substance, resembling cocaine, as appellant was pouring it from the bottle. He said,

6

'[A]nyone that has been in the business, either from my end or the other end can tell the difference between a cutting agent and cocaine.'" (*Sonleitner, supra*, 183 Cal.App.3d at p. 370.) And in *Marinos*, the appellate court affirmed a drug conviction on a police officer's expert opinion — based on the odor and appearance of a cigarette smoked by the defendant — that the cigarette contained marijuana. (*Marinos, supra,* 260 Cal.App.2d at p. 738.)

Courts in other jurisdictions have reached similar results. (*Jones v. Commonwealth* (Ky. 2011) 331 S.W.3d 249, 254-255 (*Jones*) [sufficient evidence supported the defendant's conviction for trafficking in a controlled substance, in part because two "fully-qualified" chemists "visually identified" the drug by relating that "based upon the shape, color, and markings, the drug visually appeared to be alprazolam"]); *State v. Carter* (La. App. 2008) 981 So.2d 734, 744 [expert in forensic chemistry identified the "green pills" as containing hydrocodone by performing a "visual inspection and comparison with pictures in a book"]; *Sterling v. State* (Tex. App. 1990) 791 S.W.2d 274, 277 [pharmacist testified tablets were diazepam based on their appearance and markings]; *State v. Stank* (Wis. App. 2005) 708 N.W.2d 43, 55 (*Stank*) [forensic scientist identified a pill as Oxycontin by, among other things, using a *Physician's Desk Reference*.)

According to appellant, the rationale from *Sonleitner* and *Marinos* does not apply here because this case concerns prescription drugs, not "street" drugs. Appellant claims "the distinction between street and prescription drugs is important in evaluating whether expert testimony is helpful in identifying a drug[,]" apparently because lay jurors identify pills by their appearance and labeling "on a routine basis in their everyday lives" but cannot identify an "unlabeled, illegal street drug" such as marijuana, heroin, or a "pile of white powder." Appellant faults the People for "ignoring the substantive differences" between "street" and prescription drugs, but he does not identify those differences. We are not persuaded.

"[A]lthough expert testimony is generally inadmissible on topics 'so common' that jurors of ordinary knowledge and education could reach a conclusion as intelligently

7

as the expert, an expert may testify on a subject about which jurors are not completely ignorant. [Citations.] In determining the admissibility of expert testimony, 'the pertinent question is whether, even if jurors have some knowledge of the subject matter, expert opinion testimony would assist the jury.' [Citations.]" (*Lindberg*, *supra*, 45 Cal.4th at p. 45; see also Simons, Cal. Evidence Manual (2013 ed.) § 4:7, p. 308, citing cases (Simons).)

Here — where chemical testing was not performed — Greenough's testimony would help the jury determine whether appellant possessed methadone in violation of Health and Safety Code section 11350. (See *In re Waylon M.* (1982) 129 Cal.App.3d 950, 952 [identification of the nature of the substances "called for expert opinion" where chemical test results were not admitted into evidence at trial]; *Schrock, supra,* 855 F.2d at p. 333.) Although some jurors may possess general knowledge about prescription medication, we are not persuaded by appellant's argument, unsupported by authority, that the average juror would be able to identify a pill such as methadone based on its "appearance and labeling." The appearance of medication in pill form is characterized by a variety of features — called "trade dress" — such as color, size, shape, finish, presence or absence of scoring, as well as imprint or inscription. (See *Jones, supra,* 331 S.W.3d at p. 255.) On this record, we cannot conclude the appearance of a methadone pill is "of such common knowledge that ordinary people could reach an opinion as well as the witness" or that Greenough's opinion would "add nothing" to the issue. (Simons, *supra,* § 4:7, p. 308; *Lindberg, supra,* 45 Cal.4th at p. 46; see also *People v. Edwards* (Aug. 22, 2013, No. S073316) ___ P.3d ___, ___ [ 2013 WL 4464611] [doctor's "medical expertise provided additional insight above and beyond the jury's general knowledge" about painfulness of victim's injuries].)

Relying on *State v. Ward* (N.C. 2010) 694 S.E.2d 738 (*Ward*), appellant contends Greenough's act of comparing a photograph of methadone on the "facts and comparisons" program with the actual pill would not assist the jury under section 801, subdivision (a) because jurors can make the same comparison. In *Ward*, the North Carolina Supreme Court held the trial court abused its discretion by permitting the

8

prosecution's "expert witness to identify certain pills when the expert's methodology consisted solely of a visual inspection process." (*Id.* at p. 739.) The *Ward* court determined the visual inspection was "not sufficiently reliable to identify the substances at issue" (*id.* at p. 743) and concluded "a scientific, chemical analysis must be employed to properly differentiate between the real [controlled substance] and the counterfeit." (*Id.* at pp. 745, 747.)

Ward is distinguishable for several reasons. First, under California law, chemical analysis is not required to establish the identity of a controlled substance. (See *People v. Palaschak* (1995) 9 Cal.4th 1236, 1242 (*Palaschak*) [elements of possession of a controlled substance "'may be established circumstantially'"].) Second, and in contrast to the expert witness in *Ward*, Greenough did not — as appellant contends — simply compare the pills seized during the incident to pictures of methadone pills. In addition to performing a visual inspection, Greenough entered the imprint on the pills into a program which generated the name of the medication. For these reasons, *Ward* has no application here. (See *Jones, supra,* 331 S.W.3d at p. 255 [visual identification "confirmed through a review on Identidex, a database only accessible to law enforcement agencies"].)

We reject appellant's claim that comparing a pill to an image in a database is akin to comparing shoeprints, which is a matter of nonexpert testimony under *People v. Taylor* (1935) 4 Cal.2d 495, 497 (*Taylor*). There, the California Supreme Court stated the comparison of shoeprints is a matter of nonexpert testimony because "shoeprints are so large and the points of similarity so obvious, the comparison . . . is a matter of nonexpert rather than of expert testimony." In contrast to *Taylor*, discerning the identity of a prescription pill — counterfeit or otherwise — requires a pharmacist to consider a variety of physical characteristics, as we have noted, including the drug's inscription, the inscription's type or font, the color, size, shape, and weight of the pill. Prescription pills, unlike shoeprints, are not large, and do not have obvious "points of similarity." (Cf. *Taylor,* at p. 497.) There are many variations in prescription pills, and each prescription pill has a unique trade dress. We conclude Greenough's identification of pills seized during the incident as methadone was "'sufficiently beyond common experience'" that

9

Greenough's testimony "'would assist the trier of fact.'" (*People v. Gardeley* (1996) 14 Cal.4th 605, 617.)

Next, appellant contends the court should have excluded Greenough's testimony because "it was not based on the type of matter that would normally be relied on to establish the chemical composition of a purported prescription drug in a criminal trial." According to appellant, the method Greenough used to compare the seized pills "to a database . . . did not provide a reliable basis for determining what the pills were."[4] Our Supreme Court has recently held that "'[a]n expert opinion has no value if its basis is unsound. [Citations.] Matter that provides a reasonable basis for one opinion does not necessarily provide a reasonable basis for another opinion. [S]ection 801, subdivision (b), states that a court must determine whether the matter that the expert relies on is of a type that an expert reasonably can rely on 'in forming an opinion *upon the subject to which his testimony relates*.' [Citation.] We construe this to mean that the matter relied on must provide a reasonable basis for the particular opinion offered, and that an expert opinion based on speculation or conjecture is inadmissible.'" (*Sargon, supra,* 55 Cal.4th at p. 770, quoting *Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 564.)

Here, Greenough testified he employed the "facts and comparisons" program used by Walgreen's to identify the seized pills. First, he entered the pills' imprint into the program, which generated "the name of the medication." Then he printed out a picture of the pill from the program and compared the picture to the seized pills. We believe this explanation is sufficient to support Greenough's opinion for purposes of identifying the pills as methadone. In our view, Greenough's failure to describe the "facts and comparisons" program in more detail does not suggest his conclusions are speculative, conjectural, or lack a reasonable basis. On this record, the trial court did not abuse its discretion by concluding there was a reasonable basis for Greenough's opinion. The

---

[4] Appellant relies on *Ward, supra,* 694 S.E.2d 738 and *People v. Mocaby* (Ill. App. 2008) 882 N.E.2d 1162, 1167, which require chemical testing of a suspected controlled substance. We are not persuaded by these authorities because — as we have explained — California law does not require chemical analysis to establish the controlled nature of a substance. (*Palaschak, supra,* 9 Cal.4th at p. 1242.)

10

court's decision to admit the testimony was not "'so irrational or arbitrary that no reasonable person could agree with it.'" (*Sargon, supra,* 55 Cal.4th at p. 773, quoting *People v. Carmony* (2004) 33 Cal.4th 367, 377; see also *State v. Clark* (Mont. 2008) 198 P.3d 809, 819 [pharmacist's "testimony regarding the identification of prescription drugs by reference to their unique imprint code and national pharmaceutical databases is not novel scientific evidence requiring a *Daubert* hearing"]; *Stank, supra,* 708 N.W.2d at p. 55 [noting courts "have recognized the *Physician's Desk Reference* as a source commonly relied upon by members of the medical profession and pharmaceutical industry"].)

## II.

### *Appellant's Prosecutorial Misconduct Claim Fails*

Next, appellant claims the prosecutor committed misconduct during closing argument by attempting to shift the burden of proof to require him to prove his innocence. We address the merits of the claim notwithstanding his trial counsel's failure to request an admonition. (See *People v. Panah* (2005) 35 Cal.4th 395, 462.)

"'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such "'unfairness as to make the resulting conviction a denial of due process.'" [Citations.] Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial.' [Citation.] 'In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for review.' [Citation.] When a claim of misconduct is based on the prosecutor's comments before the jury, "'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'" [Citation.]" (*People v. Friend* (2009) 47 Cal.4th 1, 29.)

"A prosecutor has wide latitude to challenge a defendant's evidence, and so long as the argument is fair comment on the evidence or a reasonable inference drawn

therefrom, it is permissible." (*People v. Gray* (2005) 37 Cal.4th 168, 216.) "[T]he prosecutor may comment "'on the state of the evidence, or on the failure of the defense to introduce material evidence or to call logical witnesses.'"" (*People v. Cornwell* (2005) 37 Cal.4th 50, 90, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22, quoting *People v. Turner* (2004) 34 Cal.4th 406, 419.) "'It is settled that a prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.' [Citation.] . . ." (*People v. Wharton* (1991) 53 Cal.3d 522, 567.) A reviewing court must view the allegedly objectionable statements "in the context of the argument as a whole." (*People v. Dennis* (1998) 17 Cal.4th 468, 522 (*Dennis*).)

There was no misconduct here. The prosecutor's comments merely drew attention to the absence of a witness — Hupp — who might have corroborated appellant's theory of the defense: that he did not possess or transport the narcotics. (*People v. Gonzalez* (2012) 54 Cal.4th 1234, 1275.) During cross-examination of Chadwick, defense counsel sought to establish Hupp could have possessed and transported the drugs, asking Chadwick, "Ms. Hupp had just as easy access to the same items when she drove over to Sea West; correct?" And during closing argument, defense counsel repeatedly argued the drugs were Hupp's, not appellant's. The prosecutor was responding to appellant's asserted defense that the drugs belonged to Hupp and commenting on the lack of evidence to support the defense theory.

*People v. Woods* (2006) 146 Cal.App.4th 106 (*Woods*) — where the prosecutor committed misconduct by arguing that the defendant was "'obligated' to put on evidence" and where she employed "factually unsupported argument" and "argument [that] was largely nonsensical" — is inapposite. (*Id.* at pp. 113, 116.) Here and in contrast to *Woods*, the prosecutor did not assert the defense had the obligation to present evidence. The prosecutor simply commented on appellant's failure to call Hupp as a defense witness. The prosecutor's argument was factually supported and was a fair comment on the evidence. Additionally, no reasonable juror would have taken the

12

prosecutor's comments to imply a shift in the burden of proof, particularly where the court and the attorneys for both parties repeatedly advised the jury that the prosecution had the burden of proof beyond a reasonable doubt.

Finally, we reject appellant's claim that the prosecutor committed misconduct by improperly suggesting the defense could have tested the methadone pills. During closing argument, defense counsel argued the methadone pills could be counterfeit because "there was no actual test done. None. . . . They could have tested it, but, no. Is it a knock-off? Is [it] actually Methadone? . . . [I]t was never tested. It's their burden of proof to actually test the substance." On rebuttal, the prosecutor could respond by arguing appellant had presented no evidence showing the pills were counterfeit. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1026 ["[a]rguments by the prosecutor that otherwise might be deemed improper do not constitute misconduct if they fall within the proper limits of rebuttal to the arguments of defense counsel"].) Because the prosecutor's comments about methadone testing responded to defense counsel's argument, there was no misconduct.

We have reviewed the prosecutor's comments on Hupp and on the lack of methadone testing "in the context of the argument as a whole" and conclude they do not constitute misconduct. (*Dennis, supra,* 17 Cal.4th at p. 522.)

13

DISPOSITION

The judgment is affirmed.

_____
Jones, P.J.

We concur:

_____
Simons, J.

_____
Bruiniers, J.