[No. B181412. Second Dist., Div. Eight. Nov. 30, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN WOODS, Defendant and Appellant.

**COUNSEL**

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Mary Sanchez and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BOLAND, J.—**

## INTRODUCTION

Appellant Steven Woods challenges his narcotics convictions on various grounds, including prosecutorial misconduct and a violation of his right to compulsory process. We conclude the prosecutor engaged in multiple acts of prejudicial misconduct.

## BACKGROUND AND PROCEDURAL HISTORY

On the afternoon of September 6, 2003, Los Angeles Police Department (LAPD) Officer Bruce Campbell saw appellant and three or four other men standing around outside. Campbell and his partner stopped and talked to the men. Campbell then hid in a nearby alley and watched appellant as he sat in a plastic chair. Ernest Nunley parked about 10 yards from appellant's location, walked up to appellant, spoke to him, and handed him money. Appellant walked to a nearby car, retrieved something from the trunk, returned to Nunley, and handed him something. Campbell and his partner arrested Nunley, and then arrested appellant. They found rocks of cocaine base in the possession of both Nunley and appellant.

On April 30, 2004, while appellant's trial on charges relating to the September 6, 2003 incident was in progress, undercover LAPD Officer Guadalupe Ruiz made a "controlled purchase" of cocaine base in the yard of a house. Michael Coulter took the officer's money and looked at appellant, who was seated in the yard. Appellant nodded, and Coulter handed Ruiz a rock of cocaine base. Numerous other officers swept into the yard and arrested appellant, Coulter and others.

The trial court dismissed the jury, and the prosecutor dismissed and then refiled the charges. The prosecutor also filed a new case alleging two counts stemming from the April 30, 2004 incident. The two cases were ultimately consolidated. The amended information in the consolidated case alleged two counts pertaining to each of the incidents, plus numerous enhancement allegations.

In the trial of the consolidated cases, a jury acquitted appellant of two counts alleging the sale, transportation, or offer to sell cocaine base. It convicted him of possessing cocaine base on September 6, 2003 (a lesser offense included in the charged offense of possessing cocaine base for sale), and possessing cocaine base for sale on April 30, 2004. The court found

appellant committed the latter offense while on bail, had served five prior prison terms within the scope of Penal Code section 667.5, subdivision (b), and had suffered three prior narcotics sales convictions within the scope of Health and Safety Code section 11370.2, subdivision (a). Appellant was sentenced to 19 years in prison.

## DISCUSSION

Appellant contends that various portions of Prosecutor Lori Jones's arguments constituted misconduct.

■ Conduct by a prosecutor can so infect the trial with unfairness as to make the resulting conviction a denial of due process. (*People v. Farnam* (2002) 28 Cal.4th 107, 167 [121 Cal.Rptr.2d 106, 47 P.3d 988].) But conduct by a prosecutor that does not render a trial fundamentally unfair may nonetheless constitute misconduct under state law if it involves the use of deceptive or reprehensible methods in an attempt to persuade the trier of fact. (*Ibid.*)

If a prosecutorial misconduct claim is based on the prosecutor's arguments to the jury, we consider how the statement would, or could, have been understood by a reasonable juror in the context of the entire argument. (*People v. Dennis* (1998) 17 Cal.4th 468, 522 [71 Cal.Rptr.2d 680, 950 P.2d 1035]; *People v. Benson* (1990) 52 Cal.3d 754, 793 [276 Cal.Rptr. 827, 802 P.2d 330].) No misconduct exists if a juror would have taken the statement to state or imply nothing harmful. (*People v. Benson, supra*, 52 Cal.3d at p. 793.)

### A. Argument regarding Campbell

Defense counsel argued that the jury should not believe Campbell's testimony because the timing of events stated in his police report was contradicted by computer access logs, the implausibility of several aspects of his testimony, his demeanor while testifying, and his hesitancy in marking his position on a photograph all indicated he was lying. Counsel further argued that aspects of Campbell's behavior, such as running computer checks on people "for no reason," indicated he was a "cowboy cop" who trampled on the rights of people in South Central Los Angeles. Counsel also argued that the testimony of defense witness Julian Jones indicated Campbell was not present in the alley from which he claimed to observe the sale to Nunley, and the testimony of other defense witnesses contradicted Campbell.

In her rebuttal, Jones argued, "Officer Campbell has a job to do. He has been doing that job for many, many years. [Defense counsel] didn't bring one witness into this courtroom to say that he doesn't do it properly. That he does it in a poor manner, that he does it wrong. That he tramples on anybody's rights. Not one witness came into court to say that but she thinks it's okay for her to stand up here in front of you and say that and that you should take it as gospel. No, she is obligated to put the evidence on from that witness stand." Defense counsel objected, adding that she was "not obligated to do anything." The court overruled the objection.

Jones then argued, "If there was anything to show that he was a bad cop, that he did something that was misconduct or inappropriate or wrong in this day and age, you'd have heard about it. You'd have heard about it right there from the witness stand." Defense counsel again objected, and the court again overruled the objection.

Jones continued, "You know why you didn't? Because it doesn't exist. That's why."

Appellant contends that in this segment of argument, Jones vouched for Campbell and argued facts outside the record by asserting that no evidence of his misconduct existed. He also contends Jones knew her assertion that there was no evidence of Campbell's wrongdoing was false, as appellant's *Pitchess*[1] motions had revealed the existence of four complaints against Campbell. Appellant further contends the argument that defense counsel had violated her "obligation" to put on evidence improperly denigrated defense counsel.

■ A prosecutor may fairly comment on and argue any reasonable inferences from the evidence. (*People v. Wharton* (1991) 53 Cal.3d 522, 567 [280 Cal.Rptr. 631, 809 P.2d 290].) Comments on the state of the evidence or on the defense's failure to call logical witnesses, introduce material evidence, or rebut the People's case are generally permissible. (*People v. Medina* (1995) 11 Cal.4th 694, 755 [47 Cal.Rptr.2d 165, 906 P.2d 2].) However, a prosecutor may not suggest that "a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1340 [65 Cal.Rptr.2d 145, 939 P.2d 259]; see also *People v. Young* (2005) 34 Cal.4th 1149, 1195–1196 [24 Cal.Rptr.3d 112, 105 P.3d 487].)

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

A prosecutor may not suggest the existence of " 'facts' " outside of the record by arguing matters not in evidence. (*People v. Benson, supra*, 52 Cal.3d at pp. 794–795.) Nor may a prosecutor suggest that matters outside the record establish the veracity of a witness; however, the prosecutor may assure the jury of a witness's apparent honesty or reliability based on matters in the record. (*People v. Padilla* (1995) 11 Cal.4th 891, 946 [47 Cal.Rptr.2d 426, 906 P.2d 388] overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800 [72 Cal.Rptr.2d 656, 952 P.2d 673].) It is also improper for a prosecutor to resort to personal attacks on the integrity of opposing counsel. (*People v. Bell* (1989) 49 Cal.3d 502, 538 [262 Cal.Rptr. 1, 778 P.2d 129].)

The existence of complaints against Campbell did not establish misconduct on his part, as appellant failed to establish that any of the complaints were valid. But for Jones's assertion that defense counsel was "obligated" to put on evidence and her reference to "this day and age," the argument in issue would be unobjectionable. However, the latter reference clearly suggested that with enhanced information access through the Internet or other sources, counsel had an unimpaired ability to discover the existence of any misconduct by a police officer. This is, of course, untrue, as police personnel records are confidential and are not available on the Internet or even through resources available to private investigators. Coupled with Jones's emphatic assertion that evidence of misconduct by Campbell "doesn't exist," reasonable jurors could only understand the argument to mean that the prosecutor had actual knowledge that Campbell had never engaged in misconduct. The argument therefore constituted vouching.

Respondent contends Jones's argument was a fair response to defense counsel's argument that Campbell acted improperly. Defense counsel's argument, however, was based upon the evidence, reasonable inferences therefrom, inherent implausibilities in the version of facts to which Campbell testified, and Campbell's demeanor while testifying. It was a well-reasoned and reasonable argument. Jones's response was disproportionate and unfairly invoked an inference that was based on neither truth nor evidence.

Even more troubling is Jones's statement that defense counsel had an "obligation" to present evidence. This statement went far beyond a mere comment on the failure of the defense to present evidence proving misconduct by Campbell. The assertion that the defense had an "obligation" to present evidence expressly and erroneously advised the jury that appellant bore some burden of proof or persuasion. The court not only failed to correct this misstatement, but overruled appellant's objection, thereby implying that

the "obligation" to which Jones referred actually existed. It is inconceivable that the jury would understand this uncorrected, implicitly approved statement to mean anything other than appellant carried a burden of proof or production. Jones's misstatement cannot be reconciled with due process. It constituted federal constitutional error. (*In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 90 S.Ct. 1068]; *Mullaney v. Wilbur* (1975) 421 U.S. 684, 699–701 [44 L.Ed.2d 508, 95 S.Ct. 1881]; *Patterson v. New York* (1977) 432 U.S. 197, 215 [53 L.Ed.2d 281, 97 S.Ct. 2319]; *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1214–1215 [275 Cal.Rptr. 729, 800 P.2d 1159].)

B.   *Argument regarding 12 to 15 police officers*

Officer Ruiz testified that between 12 and 15 officers arrived at the scene of the April 30, 2004 controlled buy. Detective Porfirio Montejano testified that "over ten" officers arrived. Defense witness Anthony Timmons testified that "about a dozen" officers came into the yard after "Boo-Boo" handed something to Ruiz.

In her argument, defense counsel described the operation as follows: "They need 12 to 15 guys to come running in like paratroopers for their security."

Jones subsequently argued, "In a day of videotapes and people standing out with video cameras, do you honestly believe that out of 12 officers that went to that location that day they all sat down and got together and cooked up what they are going to say, that they all agreed as to what was going to go into the report, and they allowed that report to be filed with their names in it and their serial numbers in it? They are going to risk their careers and their livelihood for kilos of cocaine? For some heroin? Maybe for some stolen Maserati car parts? No. For five rocks of cocaine? That's what this comes down to, ladies and gentlemen. Mr. Woods and his cocaine that he tossed that day. 12 officers, 12 individual careers, pensions, house notes, car notes." Defense counsel objected that there was no evidence to support the argument. The court overruled the objection.

Jones continued her argument, stating, "Bank accounts, children's tuition." Defense counsel asserted a "running objection," which the court overruled.

After the ruling on the objection, Jones resumed the argument, saying, "Are these 12 officers willing to risk those things for Mr. Woods and his five rocks of cocaine?" Defense counsel objected that "12 officers didn't testify." By directing Jones to continue, the court implicitly overruled the objection.

Appellant contends that Jones's argument vouched for prosecution witnesses and argued matters not in evidence. The number of officers cited by Jones was supported by the evidence. Although no evidence indicated that anyone in the area videotaped the incident, Jones's reference to people with video cameras would most likely be understood by jurors to refer to well-known incidents in which police misconduct was captured on home video. This effectively was a reference to common experience or knowledge, and was not improper. (*People v. Wharton, supra,* 53 Cal.3d at p. 567.) Jones's reference to the presence of the names and "serial numbers" of the officers in the police report extended beyond the evidence. Jones's argument strayed farther into impermissible territory when she implicitly suggested that all 12 unidentified, mostly nontestifying officers, would testify to the same factual version of what occurred during the incident or its aftermath; the same 12 officers had been involved in a case or cases involving higher stakes such as kilos of cocaine, heroin, and stolen Maserati parts, but had not risked their careers for the higher stakes case or cases; and the same 12 officers had mortgages, car loans, and children in private schools. Although the officers' financial obligations and experience were irrelevant to appellant's guilt, Jones argued these factual matters outside of the record to attempt to establish the veracity of the few members of the group of 12 officers who testified. This constituted vouching. Moreover, to the extent Jones implied that the uncalled officers would have testified to the same facts as the officers who testified, the argument implicated appellant's Sixth Amendment rights to confront and cross-examine uncalled prosecution witnesses. (*People v. Hall* (2000) 82 Cal.App.4th 813, 817 [98 Cal.Rptr.2d 527].)

## C. *Drive-up and swap meet arguments*

Jones further argued, "She would like you to believe that somehow this criminal enterprise of Mr. Woods that he was doing in April it should be happening in the dark at 2:00 in the morning in some alleyway. Well, you know if that were true, there wouldn't be kids who could drive their cars right up to the curb, put their hand out, exchange some money and drive off. It is a regular swap meet in Los Angeles County right now, ladies and gentlemen. If you want the drugs, you can pretty much drive up to any street in Los Angeles—." Defense counsel objected that no evidence supported this argument. The court overruled the objection.

Appellant contends this aspect of the argument was based upon matters not in evidence.

There was no evidence that in either incident a "kid" or adult drove up to a curb, put his or her hand out, and exchanged money for a controlled substance. In the September incident,[2] according to prosecution witnesses, Nunley parked about 10 yards away, walked up to appellant, handed appellant money, and subsequently received drugs after appellant returned from a walk to a different car. According to Nunley's testimony, he did not purchase any drugs from appellant. In the April incident, according to prosecution witnesses, Ruiz walked up to a yard, offered money that was taken by Coulter, and received a rock of cocaine after appellant nodded his approval. Although the jury had an opportunity to view both Ruiz and Nunley, the record does not indicate that either was sufficiently youthful to be called "a kid." In addition, no evidence supported Jones's assertion that drugs may be obtained by driving up any street in Los Angeles. This claim is neither accurate nor a matter of common experience. With respect to the September incident, Jones's factually unsupported argument tended to reinforce the credibility of prosecution witnesses against the very rational defense argument that it was not plausible that appellant would engage in such brazen criminal behavior, especially right after uniformed police officers in marked cars had driven up, stopped, and talked to appellant and his companions. With respect to the April incident, the argument was largely nonsensical, as defense counsel did not argue inherent improbability based upon location, timing or any circumstance other than Ruiz's testimony that he had previously met appellant and introduced himself as a police officer. Nonetheless, the argument of matters outside the record constituted misconduct.

D. *Argument that counsel "conjured up" witnesses*

Defense witness Anthony Timmons testified on cross-examination that one week earlier, he contacted appellant's family and offered to testify.

In her closing argument, Jones stated, "Do you know what's interesting about the defense witnesses in this case? They were conjured up in the last week and a half." Defense counsel objected, but the court overruled the objection. Jones continued, saying, "[I]t was over the weekend that Mr. Timmons was conjured up and he is going to come in and help his friend."

■ Appellant contends this argument cast aspersions upon the character and integrity of defense counsel. "It is generally improper for the prosecutor to accuse defense counsel of fabricating a defense" or to otherwise denigrate defense counsel. (*People v. Bemore* (2000) 22 Cal.4th 809, 846 [94

---

[2] Although the argument expressly referred to the April incident, respondent argues it was factually supported by testimony regarding the September incident.

Cal.Rptr.2d 840, 996 P.2d 1152]; see also *People v. Welch* (1999) 20 Cal.4th 701, 753 [85 Cal.Rptr.2d 203, 976 P.2d 754].)

"Conjure" means to "make (something) appear unexpectedly or seemingly from nowhere as if by magic," call an image to mind, cause someone to feel or think of something, or call upon a spirit or ghost "to appear, by means of a magic ritual." (The New Oxford American Dict. <http://www. oxfordreference.com> [as of Nov. 30, 2006].) With reference to a witness or other evidence, "conjured up" clearly connotes the creation of a witness, as if by magic, and the fabrication of testimony. Jones thus effectively argued that defense counsel suborned perjury. While it may be permissible to observe, with proper evidentiary support, that a witness had not come forward earlier, Jones crossed into impropriety by asserting that defense counsel "conjured up" a witness. In addition, nothing in the testimony of any other defense witness indicated recent discovery. Therefore, Jones's statement that "defense witnesses" "were conjured up" was either false or based upon matters not in evidence.

### E. *Prejudice*

In assessing prejudice, we consider the cumulative effect of Jones's misconduct because the number and gravity of incidents "raises the strong possibility the aggregate prejudicial effect of such errors was greater than the sum of the prejudice of each error standing alone." (*People v. Hill, supra,* 17 Cal.4th at p. 845.) In assessing the effect of the misconduct, we must factor in the " 'special regard the jury has for the prosecutor' " (*People v. Bolton* (1979) 23 Cal.3d 208, 213 [152 Cal.Rptr. 141, 589 P.2d 396]), and the circumstance that the trial court overruled appellant's objection to every improper argument discussed in this opinion. Because some of Jones's improper arguments were of federal constitutional magnitude, we assess the cumulative effect of the misconduct under the standard applicable to federal constitutional errors that are not reversible per se. Respondent has the burden of proving beyond a reasonable doubt that the error did not contribute to the verdict. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].)

Respondent has not met this burden. In the sole paragraph in its brief arguing that the prosecutorial misconduct was harmless, respondent contends the challenged arguments were a small part of the prosecutor's entire argument, the court instructed the jury that arguments were not evidence, and the acquittal on counts one and three and conviction of a lesser included offense on count two demonstrates the jury was not affected by the prosecutor's arguments.

■ Although the prejudicial effect of mild misconduct during argument may be dissipated by an instruction that the statements of the attorneys are not evidence (*People v. Hughey* (1987) 194 Cal.App.3d 1383, 1396 [240 Cal.Rptr. 269]), an instruction is not a magical incantation that erases from jurors' minds a prosecutor's erroneous representations, especially when the trial court implicitly endorses the representations by overruling defense counsel's objections. ■ It defies reason to assume that the instruction could have undone the grave harm of Jones's legally incorrect and constitutionally impermissible assertion that appellant had an obligation to produce witnesses to establish wrongdoing by the police, which the court left uncorrected. The court's failure to sustain objections to this and other instances of Jones's misconduct effectively informed the jury that the law, facts, inferences and reasoning processes Jones urged upon them were valid and acceptable. Given the jury's assumed special regard for the prosecutor and the court's effective endorsement of the improper arguments, a standard instruction that these statements were not evidence was not reasonably likely to cause jurors to reject them and purge them from their minds.

Nothing about the remainder of Jones's argument nullified or even diminished the prejudice inherent in her improper arguments. Although we doubt that an unduly long argument could negate or reduce the prejudice of Jones's arguments, her argument was not lengthy, she engaged in multiple instances of misconduct, and several incidents, especially shifting the burden of proof or production to appellant, were significant. (Cf. *People v. Stansbury* (1993) 4 Cal.4th 1017, 1057 [17 Cal.Rptr.2d 174, 846 P.2d 756] revd. on another ground *sub nom. Stansbury v. California* (1994) 511 U.S. 318 [128 L.Ed.2d 293, 114 S.Ct. 1526] [single appeal to jury to view the crime from the victim's viewpoint in the context of four-day "otherwise scrupulous" argument by prosecutor deemed harmless].)

The jury's verdict shows that jurors clearly harbored doubts about the prosecution's case. It does not, however, establish beyond a reasonable doubt that Jones's misconduct failed to contribute to the verdict rendered. Respondent has failed to meet its burden of showing it is not reasonably possible the jury would have acquitted appellant on one or both charges of which he was convicted—or convicted him of a lesser offense on count four—if Jones had refrained from improperly vouching for her witnesses, arguing matters outside of the evidence, imposing a burden of proof or persuasion upon appellant, and denigrating defense counsel. Indeed, it is entirely reasonable to conclude that Jones's misconduct may have played a role in appellant's conviction. Credibility was the crux of this case. Therefore, vouching for

prosecution witnesses, implicitly asserting that other uncalled witnesses would have corroborated the officers who testified, impugning defense counsel's integrity, and shifting a burden of proof or production regarding the officers' credibility onto appellant were grievous errors that may well have played a substantial role in the verdict.

Although not urged by respondent, the instruction with the notoriously complex CALJIC No. 2.90 cannot be deemed to negate the inherent harm of a clear, concise assertion by a prosecutor that defense counsel had an obligation to present evidence. CALJIC No. 2.90 clearly states that the defendant is presumed innocent and the prosecution bears the burden of proving him guilty beyond a reasonable doubt, and any attorney would clearly understand that these two principles mean that the defendant has no burden of production or proof. However, we cannot reliably assume that jurors would necessarily understand CALJIC No. 2.90 to negate Jones's assertion that appellant had an obligation to produce witnesses to establish police wrongdoing. This is especially true in light of the trial court's implicit endorsement of Jones's misstatement by overruling defense counsel's specific objection that she had no obligation.

Accordingly, we reverse the judgment. Although we need not address appellant's remaining contentions, we briefly comment on a final claim of prosecutorial misconduct, which appellant also raised as a separate issue.

### F. Intimidation of potential defense witness

Appellant contends Jones committed misconduct and violated his right to compulsory process by intimidating potential defense witness Michael Coulter. The information filed in case No. TA074549, which pertained to the April incident, charged Coulter and appellant with two counts each. It charged Coulter with the sale, transportation or offer to sell cocaine and possession of cocaine base and alleged one prior strike and three prior narcotics convictions. Coulter pled guilty and was sentenced to a four-year term in state prison.

Coulter was in state prison at the time of appellant's trial. Defense counsel obtained a removal order for him, and he appeared in court with his own attorney. At that time, Jones informed the court that Coulter had accepted a plea agreement expressly conditioned upon his promise not to testify in appellant's case. Coulter's counsel confirmed this condition of the plea agreement. When the court asked Jones whether she would move to vacate Coulter's plea if he testified for appellant, she replied, in Coulter's presence, "I will definitely pursue that. Now, whether it will be successful or not, I don't know. But if he testifies in this case, I am definitely going to go and I

am going to call appellate and I am going to make every attempt to have his plea withdrawn and we will proceed to trial against him if I am successful." After a discussion with his attorney, Coulter told the court he would follow his attorney's advice and refuse to testify. The court excused Coulter as a witness.

■ "A defendant's constitutional right to compulsory process is violated when the government interferes with the exercise of his right to present witnesses on his own behalf," e.g., by intimidating defense witnesses. (*In re Martin* (1987) 44 Cal.3d 1, 30 [241 Cal.Rptr. 263, 744 P.2d 374].) Intimidation may take many forms, such as telling defense witnesses they will be prosecuted for perjury or any crimes they reveal while testifying, threatening that witnesses will suffer adverse consequences in their own criminal cases or investigations, and arresting a defense witness before he, she or other defense witnesses complete their testimony. (*Id.* at pp. 30–31.)

Jones intimidated Coulter in two ways: by conditioning his plea agreement on his promise not to testify for appellant, and by threatening to make her best effort to withdraw the plea agreement and proceed to trial against him. Both acts, especially the condition of the plea agreement, are a source of great concern. Jones purposely interfered with appellant's right to present witnesses on his behalf. Moreover, her conduct threatened to undermine the entire adversarial process, distort the factfinding process, and violate appellant's rights to both due process and compulsory process.

However, appellant "bears the burden of demonstrating at least a reasonable possibility that the witness could have given testimony that would have been both material and favorable; that the prosecution engaged in activity that was entirely unnecessary to the proper performance of its duties and of such a character as to transform a defense witness from a willing witness to one who would refuse to testify; and a causal link between that misconduct and his inability to present witnesses on his own behalf." (*People v. Harris* (2005) 37 Cal.4th 310, 343 [33 Cal.Rptr.3d 509, 118 P.3d 545].) Because the trial record reflects no trace of what Coulter's testimony would have been, appellant can prove neither that his testimony would have been material nor that it would have benefited appellant. This obstacle does not, however, eliminate our serious concern over Jones's clear effort to obstruct appellant's presentation of a defense. If the People elect to retry this case, the trial court must do its utmost to eliminate the sinister effect of Jones's prior intimidation of Coulter so that neither the condition of his plea agreement nor Jones's threat plays any role in his decision whether to testify for appellant.

## DISPOSITION

The judgment is reversed.

Cooper, P. J., and Rubin, J., concurred.

A petition for a rehearing was denied December 27, 2006, and respondent's petition for review by the Supreme Court was denied April 18, 2007, S150000. George, C. J., did not participate therein.