Filed 8/25/15  P. v. Rodriguez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>ALBERT CRUZ RODRIGUEZ,<br><br>        Defendant and Appellant. | F069086<br><br>(Super. Ct. No. 13CM8811)<br><br>**OPINION** |

THE COURT*

APPEAL from a judgment of the Superior Court of Kings County.  Robert S. Burns, Judge.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Gomes, Acting P.J., Franson, J. and Smith, J.

Albert Cruz Rodriguez, an inmate at Avenal State Prison, was found guilty of possession of a controlled substance while in prison. He admitted three prior prison terms and a prior strike conviction. He was sentenced to 11 years in prison.

Rodriguez argues the prosecutor committed misconduct during closing argument, and the trial court erred when it explained to the jury why it was sustaining an objection made during defense counsel's closing argument. We find no merit to these arguments and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

The information charged Rodriguez with two counts of violating Penal Code section 4573.6,[1] unlawful possession of a controlled substance or any device used for the ingestion or consumption of a controlled substance while in prison. The charges arose from two separate incidents. The information also alleged Rodriguez had suffered six prior convictions resulting in his serving three prison terms within the meaning of section 667.5, subdivision (b). Finally, the information alleged Rodriguez had suffered a prior conviction that constituted a strike within the meaning of section 667, subdivisions (b) through (i).

Correctional Officer Thomas Cruse was assigned to the investigative services unit at Avenal State Prison on the day of the second incident. Correctional officers, including Cruse and his partner, Officer Russell Villalba, had been in the process of conducting a contraband search of the housing unit to which Rodriguez was assigned. The search began by a correctional officer ordering all inmates onto the ground. Instead of lying on the ground, Rodriguez walked at a fast pace towards his bunk. Rodriguez complied when Villalba ordered him to lie on the ground. Villalba also ordered Rodriguez to put his arms out to his sides, but instead Rodriguez reached into the waistband area of his clothes near his stomach. Rodriguez put his arms straight out from his sides when Villalba

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

2.

ordered him to do so a second time. He was then placed in handcuffs and removed to a nearby office to get him away from the other inmates and to deescalate the situation. The door to the office was open while Rodriguez, Cruse, and Villalba were in the office.

Because of Rodriguez's behavior, Cruse decided to perform an unclothed body search. When Cruse ordered Rodriguez to remove his pants, he saw two objects fall to the floor. When opened, the first object contained a black tar-like substance wrapped in clear cellophane, which appeared to Cruse to be heroin. The second object contained 15 bindles wrapped in a clear cellophane. Each bindle contained a black tar-like substance, which appeared to Cruse to be heroin. The first object weighed .43 grams and the second object weighed 1.12 grams.

During cross-examination Cruse explained this had been a random search for contraband; he had never encountered Rodriguez before that day; and Rodriguez had not been mentioned during the presearch briefing.

Villalba's description of the incident was consistent with that of Cruse's. Villalba explained in more detail the reason for removing Rodriguez to the office before conducting the search. When the two correctional officers saw Rodriguez reach towards his waistband, they did not know for what he was reaching and were concerned he could have been reaching for a weapon. The move to the office prevented any other inmates from attempting to assist Rodriguez during the search. Since there were only approximately 14 correctional officers present, and there were approximately 150 to 200 inmates, Villalba deemed it necessary to move Rodriguez for officer safety.

During the search, Villalba was responsible for controlling Rodriguez while Cruse conducted the search. Villalba did not see the objects fall from Rodriguez's pants but did see them lying on the ground after Cruse commented about them.

Villalba did notice what appeared to be puncture wounds on Rodriguez's arms, which could have been consistent with the intravenous injection of drugs. He also noted

Rodriguez appeared to be lethargic on the night in question, suggesting he may have been under the influence of alcohol or drugs.

The first incident occurred approximately one month before the drugs were found on Rodriguez when Correctional Officer Martina Vega had performed a random search of the bunk assigned to Rodriguez. She confiscated the pillow from Rodriguez's bed when she noted it had been altered. Inside the pillow she found an inmate-manufactured syringe used for injecting drugs.

Amber Joy, a licensed vocational nurse employed by the prison, examined Rodriguez on the day the syringe was found in his pillow. She noted a mark and a bruise on the inside of Rodriguez's arm that were consistent with the marks made by a syringe, although she did not know what had been injected or withdrawn from the arm. On cross-examination defense counsel suggested the injection may have been for insulin, and Joy stated it was possible. However, on redirect examination Joy testified that the inside of the arm was not an area where insulin normally was injected.

The jury found Rodriguez guilty of the count related to the possession of heroin and not guilty of the count related to the possession of the syringe. Rodriguez admitted three prior convictions were incurred that resulted in a prison sentence within the meaning of section 667.5, subdivision (b) and admitted he suffered a prior conviction that constituted a strike within the meaning of section 667, subdivisions (b) through (i). The trial court sentenced Rodriguez to the upper term of four years, doubled the sentence to eight years because of the strike prior, and added three years for the prison priors, for a total prison term of 11 years.

## DISCUSSION

### I. Prosecutorial Misconduct

During closing argument, defense counsel suggested to the jury that Cruse had planted the heroin and then accused Rodriguez of possessing it in order to convince

Rodriguez to become an informant.  In addition, defense counsel suggested the needle marks observed on Rodriguez's arm may have been made when Rodriguez injected insulin because he was a diabetic.  There was no evidence to support either suggestion, and the prosecutor, in her rebuttal argument, attacked the theories.  Rodriguez contends that in doing so, the prosecutor committed misconduct.

"The standards governing review of misconduct claims are settled.  'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such "'unfairness as to make the resulting conviction a denial of due process.'"  [Citations.]  Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial.'  [Citation.]  'In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for review.'  [Citation.]  When a claim of misconduct is based on the prosecutor's comments before the jury, '"the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'"'  (*People v. Williams* (2013) 56 Cal.4th 630, 671.)  If the defendant establishes that misconduct occurred, he or she also must establish it was reasonably probable a result more favorable to him or her would have been reached if the misconduct had not occurred.  (*People v. Welch* (1999) 20 Cal.4th 701, 753.)

"Regarding the scope of permissible prosecutorial argument, "'a prosecutor is given wide latitude during argument.  The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.  [Citations.]  It is also clear that counsel during summation may state matters not in evidence, but which are common knowledge or are illustrations drawn from common experience, history or literature.'  [Citation.]  'A prosecutor may "vigorously argue his case and is not limited to 'Chesterfieldian

5.

politeness'" [citation], and he may "use appropriate epithets ….""" [Citation.]'" (*People v. Stanley* (2006) 39 Cal.4th 913, 951-952.)

"Prosecutors, however, are held to an elevated standard of conduct. 'It is the duty of every member of the bar to "maintain the respect due to the courts" and to "abstain from all offensive personality." [Citation.] A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state. [Citation.] As the United States Supreme Court has explained, the prosecutor represents "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." [Citation.] Prosecutors who engage in rude or intemperate behavior, even in response to provocation by opposing counsel, greatly demean the office they hold and the People in whose name they serve.'" (*People v. Hill* (1988) 17 Cal.4th 800, 819-820.)

Prosecutorial misconduct has been found when a prosecutor mischaracterizes the evidence (*People v. Avena* (1996) 13 Cal.4th 394, 420), refers to facts not in evidence (*People v. Pinholster* (1992) 1 Cal.4th 865, 948, overruled on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459), presents arguments suggesting the burden of proof is less than beyond a reasonable doubt or otherwise misstates the law (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1215), or if he or she attacks the integrity or casts aspersions on defense counsel (*People v. Wash* (1993) 6 Cal.4th 215, 265).

In response to defense counsel's arguments, the prosecutor began her rebuttal argument by stating, "I am just going to address some of the points that [defense counsel] made. Some of his comments were completely lacking in evidence, and actually were insulting with respect to stating that the officers planted the evidence, and unfortunately the defense went there." The prosecutor then explained why officer safety required the correctional officers to move Rodriguez to the office area before they searched him.

The prosecutor next addressed the lack of evidence to support the assertion that Cruse planted the drugs on Rodriguez. "So [defense counsel] did not explain why these two officers who are career [California Department of Corrections] would come to court, testify under penalty of perjury about some evidence that they allegedly planted. There was no reasonable logical evidence, okay. [¶] Now, reasonable logical evidence would be let's say other inmates or other officers who have seen these two officers plant evidence before come in and say, yeah, I seen Officer Villalba plant evidence before on other occasions, or other inmates come in and say Officer Villalba and Cruse, they are known for planting evidence. We didn't have any of that, but instead [defense counsel] just puts that out there that Officer Cruz [*sic*] and Villalba planted the evidence."

At this point defense counsel objected that the prosecutor was mischaracterizing his argument and the evidence, apparently objecting because he had inferred that Cruse planted the evidence, not Villalba. The trial court overruled the objection.

The next area of closing argument identified by Rodriguez relates to the portion of the prosecutor's rebuttal argument wherein she addressed the suggestion that the needle marks on Rodriguez's arm were the result of insulin injections. The prosecutor first pointed out there was no evidence that Rodriguez was diabetic or required insulin injections. She concluded this portion of her argument with, "There is no evidence in the record that the defendant is a diabetic and needs insulin, and therefore would have puncture marks from insulin, okay. Please remember that. It is just an argument put out there by the defense to try to confuse you people. And I know you people aren't stupid, and I guess that is what he thinks you are." The trial court sustained defense counsel's objection to the last statement.

Rodriguez argues that it was misconduct for the prosecutor to suggest that defense counsel thought the jury was stupid, asserting this is a form of disparaging counsel.

7.

The prosecutor's remark was, perhaps, inappropriate and not consistent with the high standard of conduct required of prosecutors. However, reversal is not required for at least three reasons.

First, defense counsel did not request an admonition, so the claim of misconduct is forfeited.

Second, it is highly unlikely the jury applied the comment in an objectionable fashion. It is impossible to reconcile the jury's not guilty verdict on the syringe count with a reaction by the jury consistent with the prosecutor's remark. In other words, if the jury was offended by defense counsel's argument because it concluded defense counsel was attempting to confuse the jury, and as a result it decided to punish Rodriguez, the jury would not have found Rodriguez not guilty on the syringe count.

Third, it is unreasonable to suggest the jury would have found Rodriguez not guilty on the possession count if the prosecutor had not made the comment. The prosecutor's rebuttal argument successfully pointed out there was no evidentiary support for any of the theories suggested by defense counsel to support the contention that the prosecution failed to prove its case beyond a reasonable doubt. No motive was ever provided to explain why Cruse would plant the heroin on Rodriguez, a prisoner he had never met before the day of the search. There was no evidence Rodriguez was a diabetic. Even if there had been, the nurse who examined Rodriguez explained that a diabetic would not inject insulin in the area of the arm where Rodriguez's puncture marks were located.

Next, Rodriguez argues the prosecutor committed misconduct by vouching for the credibility of the correctional officers. According to Rodriguez, when the prosecutor pointed out that there was no evidence to support the theory that Cruse planted the heroin on Rodriguez, she was vouching for Cruse because her argument suggested no such evidence existed. The prosecutor's argument cannot be so construed. The prosecutor's point was that the jury should reject defense counsel's argument that the evidence was

planted because it was not supported by any evidence. There was no evidence to explain why Cruse would plant evidence on Rodriguez; there was no evidence that Cruse attempted to convince Rodriguez to become an informant in exchange for dropping the charges; and there was no evidence that Cruse had a history of planting evidence. This argument was not an attempt to vouch for a witness; it was an appropriate comment on the state of the evidence.

The primary case cited by Rodriguez, *People v. Woods* (2006) 146 Cal.App.4th 106 (*Woods*) provides no support for his argument. The appellate court in *Woods* concluded the prosecutor committed misconduct during her rebuttal argument. The prosecutor was responding to defense counsel's argument that the jury should not believe one of the police officers who testified in the prosecution's case. Defense counsel pointed out that the police report contradicted several aspects of the officer's testimony, the officer's testimony was implausible in several respects, the officer's demeanor while testifying suggested he was not being honest, and several defense witnesses contradicted the officer's testimony. (*Woods,* at p. 111.) Defense counsel argued the officer's behavior indicated he was a "'cowboy cop'" who violated the rights of the people living in South Central Los Angeles. (*Ibid.*)

The prosecutor responded by vigorously arguing the officer's testimony was believable. She pointed out that there was no evidence the officer had not performed his job properly or that he had violated the rights of citizens he protected. The prosecutor then argued defense counsel was "obligated to put the evidence on from that witness stand." (*Woods, supra,* 146 Cal.App.4th at p. 112.) The prosecutor continued that "in this day and age," if there was any evidence to show the officer was a "bad cop" "you'd have heard about it. You'd have heard about it right there from the witness stand." After the trial court overruled defense counsel's objection, the prosecutor continued, "You know why you didn't? Because it doesn't exit. That's why." (*Ibid.*)

The appellate court found three parts of the argument objectionable.

9.

First, the appellate court found the prosecutor committed misconduct by asserting defense counsel had an obligation to present evidence to support her argument that the officer was lying. "This statement went far beyond a mere comment on the failure of the defense to present evidence proving misconduct by [the officer]. The assertion that the defense had an 'obligation' to present evidence expressly and erroneously advised the jury that appellant bore some burden of proof or persuasion." (*Woods, supra,* 146 Cal.App.4th at p. 113.)

Second, the appellate court observed the reference to "this day and age" was misleading. The appellate court found this reference suggested defense counsel had access to information to prove an officer committed misconduct if, in fact, such evidence existed. This inference was not true because police personnel files are made confidential by statute. The appellate court held that the above comments, when combined with the third error by the prosecutor—her positive assertion there was no evidence that the officer was a "bad cop"—constituted improper vouching for the officer. The appellate court concluded the combination of these instances of misconduct resulted in a violation of the defendant's constitutional right to due process. (*Woods, supra,* 146 Cal.App.4th at p. 114.)

The comments by the prosecutor in this case were not similar to the comments by the prosecutor in *Woods.* The prosecutor in this case did not vouch for the credibility of Cruse because she did not suggest the absence of evidence meant that Cruse was being truthful. Nor did she suggest defense counsel had an obligation to present evidence to support his theory. Instead, she limited her comments to the absence of evidence that might have supported defense counsel's argument and the observation that defense counsel had had the opportunity to present evidence to support his theory, yet failed to do so. These arguments fall well within the bounds of proper conduct by a prosecutor.

The only comment made by the prosecutor that might have been inappropriate was not prejudicial. The remainder of Rodriguez's arguments are not supported by the record. Accordingly, we reject Rodriguez's claim of prosecutorial misconduct.

## II.      Judicial Comment

When addressing the count charging Rodriguez with possession of the syringe, defense counsel, in closing argument, asserted there was no reliable evidence the bunk on which the pillow was found was assigned to Rodriguez. In one part of his argument, defense counsel argued the correctional officer who found the syringe should have confronted Rodriguez to make certain the bunk was occupied by Rodriguez. "When the search took place my client wasn't even present. It could have been very reasonable to say, hey, Mr. Rodriguez, look what I found here. Come over here, explain yourself. Is this your bunk?"

At this point the prosecutor objected and asked for a sidebar. At the sidebar the prosecutor explained that after being read his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, Rodriguez invoked his right to counsel, thus preventing any questioning about the syringe. At this point defense counsel agreed to change topics.

Before the sidebar conference, the trial court stated to the jury, "I am going to sustain the objection. Ladies and gentlemen, an argument for counsel basically tells you their understanding, how they see the evidence folding out. There was no testimony whatsoever presented as to whether or not Mr. Rodriguez was confronted with the items that were found. There is just no foundation for that. So that argument is improper, so that will be sustained at this time. I think it was just a misstep or a misstatement. So you're not to consider that for [any] purpose."

Rodriguez argues this comment by the trial court effectively instructed the jury to ignore a logical and reasonable argument simply because he had not produced evidence to support the argument. By doing so, according to Rodriguez, the trial court imposed on him an obligation to produce evidence. For a variety of reasons, we disagree.

11.

First, Rodriguez fails to acknowledge that the prosecution would have violated his rights pursuant to *Doyle v. Ohio* (1976) 426 U.S. 610 had it introduced evidence that he had invoked his right to counsel when confronted by evidence that a syringe had been found in his pillow.  (See, e.g., *People v. Collins* (2010) 49 Cal.4th 175, 203.)  Therefore, when defense counsel broached the subject, he essentially was arguing that the prosecution should have produced evidence it was prohibited from producing.  The trial court recognized this problem, as apparently did defense counsel since he agreed to drop the subject.  Therefore, the argument was neither logical nor reasonable, and the trial court properly sustained the objection.

More fundamentally, the trial court's comment to the jury did not shift the burden of producing evidence to Rodriguez.  It clearly and simply explained to the jury that the trial court was sustaining the prosecutor's objection because there was no evidence to support the argument, instead of informing the jury Rodriguez had been confronted and had invoked his right to counsel.

Finally, any possible error was harmless under any standard of review *because Rodriguez was found not guilty of the count related to possession of the syringe.* Accordingly, there is no merit to this argument.

**DISPOSITION**

The judgment is affirmed.