Filed 4/21/21  P. v. Wilson CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>EDWARD GENE WILSON,<br><br>        Defendant and Appellant. | A157211<br><br>(San Mateo County<br>Super. Ct. No. 17-<br>SF-011064-A) |

Defendant Edward Gene Wilson appeals from his conviction by a jury of assault with a firearm (Pen. Code, § 245, subd (a)(2)[1]).  The jury also found true allegations of personal use of a firearm (§ 12022.5, subd. (a)) and infliction of great bodily injury (§ 12022.7, subd. (a)).  The jury found defendant not guilty of attempted murder.

Defendant asserts the prosecutor committed misconduct while cross-examining a defense expert and compounded that misconduct in closing argument by assertedly leading the jury to believe defendant had a duty to retreat from his perceived assailant.  We affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

## BACKGROUND[2]

At the end of the summer of 2017, defendant shot a neighbor (Neighbor) twice.

Neighbor testified he observed, from his window, defendant standing in the middle of the street, "bent at the waist, [with] hands on the knees." Concerned for defendant's safety, Neighbor approached with a walking stick. Neighbor asked, " 'Are you okay?  Do you need help?' "  Defendant responded " '[g]et the fuck away' " and shot him twice from a gun concealed under his armpit.  Defendant then fled from the scene.

Police officers found and arrested defendant in a house two and a half blocks away.  Gunshot residue was found on his hands, and the gun defendant had used was found in the home where defendant was arrested.

Defendant maintained he shot in self-defense, and retained Eric Acha, a former police officer, who was then a private investigator and owner of a martial arts school, as an investigator and expert witness.  Acha testified about use-of-force, force science, defense handgun training, and self-defense. As part of his investigation, Acha learned defendant, four years prior to the shooting, had attended a defensive handgun training course in Nevada at the Front Sight Firearms Training Institute (Front Sight).  Acha then attended the same training course.

Acha testified Front Sight teaches individuals lethal force is justified when an opponent has the ability, opportunity, and intent to cause great bodily injury or death.  Front Sight also teaches a 21-foot zone of personal safety should be maintained and that anyone coming within that zone is subject to being shot.  An armed individual should, however, present his or

_____

[2] We summarize only those facts material to the issues raised on appeal.

2

her weapon "at the ready" and say, " 'Stop or I will shoot' ."  If an attack is in progress, no warning needs to be given.  Following a shooting, the individual should move to a safe location and call 911.

Acha opined a walking stick can be considered a weapon.  He further opined defendant "acted as he was trained."

On cross-examination, the prosecutor elicited testimony from Acha that Front Sight also teaches a gunfight should be avoided, for the use of deadly force to be warranted, the threat must be unavoidable , and that its training manual states, " 'Retreat is a good idea and should be done if it is a viable alternative,"  and an individual can " 'avoid the lethal confrontation by breaking contact with your assailant and retreating to cover.' "  The manual further states use of deadly force is justified only if one cannot " 'break contact or avoid the immediate danger of death or serious bodily injury.' "  Acha additionally testified Front Sight teaches an individual who has used deadly force should check the area for any other threats, move to a position of safety, call the police to report the shooting, and then peacefully surrender.

During closing arguments, the prosecutor argued that contrary to Acha's opinion, defendant had not acted in accordance with his training.  She noted, for example, defendant made no effort to retreat from confrontation, and did not show his firearm or warn the Neighbor he would be shot if he did not stop moving towards the defendant.

Following the jury verdict, the defense moved for a new trial based on asserted prosecutorial misconduct.  Defense counsel clarified, "I am calling it error.  I don't think there was anything Ms. Diedrich did that was willful or malicious.  In fact, it was so subtle that I didn't object."  Defense counsel claimed the statements the prosecutor elicited from Acha during cross-examination, and her closing argument referencing Acha's testimony led the

3

jury to believe, incorrectly, defendant had a duty to retreat.  According to defense counsel, jurors "misused" the prosecutor's arguments and "imposed a duty on [defendant] to retreat."  Defense counsel acknowledged he had made no objection to the prosecutor's cross-examination or her closing argument, stating, "I think I was ineffective."

The trial court denied the motion for new trial and sentenced defendant to a total prison term of 11 years.

## DISCUSSION

### *Forfeiture*

As defense counsel acknowledged, no objection was made in the trial court to either the assertedly improper cross-examination or the prosecutor's closing argument.

" 'A claim of prosecutorial misconduct is ordinarily preserved for appeal only if the defendant made "a timely and specific objection at trial" and requested an admonition.' " (*People v. Potts* (2019) 6 Cal.5th 1012, 1035.) Although a defendant may be excused from objecting and requesting an admonition where an objection would have been be futile or an admonition would have been ineffectual (*ibid.*), this exception applies only in "unusual" or "extreme" circumstances.  (*People v. Riel* (2000) 22 Cal.4th 1153, 1212-1213 (*Riel*); *People v. Hill* (1998) 17 Cal.4th 800, 821 (*Hill*), overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069.)

Defendant claims objecting here would have been futile, pointing to the denial of his new trial motion.  Defendant cites no authority for the proposition that the denial of a new trial motion following an adverse verdict excuses a defendant's failure to object during trial to allegedly improper conduct by the prosecutor.  And we are aware of none.  (See *People v. Cowan* (2010) 50 Cal.4th 401, 486 [defendant's filing of a motion for new trial will

4

not revive claims that have not been preserved by a timely and specific objection]; *People v. Williams* (1997) 16 Cal.4th 153, 254 [rejecting contention that "subsequent arguments in a motion for new trial may substitute for a timely objection"].)

Moreover, defense counsel asserted he did not object because the asserted misconduct "was so subtle" he did not detect it until after the jury returned its verdict. These are not the kind of circumstances that excuse a failure to object and request for an admonishment. For example, in *Riel,* our Supreme Court rejected a futility argument, explaining that *Hill*, which found futility, "was an extreme case. There, defense counsel made a number of objections, although he did not continually object to pervasive misconduct. We found the prosecutor's 'continual misconduct, coupled with the trial court's failure to rein in her excesses, created a trial atmosphere so poisonous' that continual objections 'would have been futile and counterproductive to his client.' ([*Hill, supra,* 17 Cal.4th] at p. 821. . . .) 'Under these unusual circumstances,' we concluded defense counsel 'must be excused from the legal obligation to continually object, state the grounds of his objection, and ask the jury be admonished.' (*Id.* at p. 821. . . .) This case presents no such unusual circumstances. The trial atmosphere was not poisonous, defense counsel did not object at all, and the record fails to suggest any objections would have been futile. The normal rule requiring an objection applies here, not the unusual one applied to the extreme circumstances of *People v. Hill*. . . ." (*Riel, supra,* 22 Cal.4th at pp. 1212-1213, italics omitted.) Defendant failed to demonstrate there were "unusual" or "extreme" circumstances justifying his failure to object to the claimed misconduct. Accordingly, he forfeited any asserted errors in this regard. The same is true here.

5

### *There Was No Prosecutorial Misconduct*

In any case, the prosecutor did not commit misconduct either in her cross-examination or argument.[3]

Prosecutorial misconduct occurs when the prosecutor " 'engage[s] in deceptive or reprehensible tactics in order to persuade the trier of fact to convict.' " (*Daveggio, supra,* 54 Cal.5th at p. 854.) " 'A prosecutor is allowed to make vigorous arguments . . . as long as these arguments are not inflammatory and principally aimed at arousing the passion or prejudice of the jury.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1179.)

" ' "When a prosecutor's intemperate behavior is sufficiently egregious that it infects the trial with such a degree of unfairness as to render the subsequent conviction a denial of due process, the federal Constitution is violated." ' " (*People v. Shazier* (2014) 60 Cal.4th 109, 127.) " ' "Prosecutorial misconduct that falls short of rendering the trial fundamentally unfair may still constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to persuade the trial court or the jury." ' " (*Ibid.*)

Defendant first complains about the prosecutor's cross-examination of Acha as to certain aspects of First Sight training with which defendant did not comply.

Evidence Code section 721 provides in part: "a witness testifying as an expert may be cross-examined to the same extent as any other witness and, in addition, may be fully cross-examined as to (1) his or her qualifications, (2) the subject to which his or her expert testimony relates, and (3) the matter

---

[3] " '[T]he term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error.' " (*People v. Daveggio and Michaud* (2018) 54 Cal.5th 790, 853–854 (*Daveggio*), quoting *Hill, supra,* 17 Cal.4th at p. 823, fn. 1.)

upon which his or her opinion is based and the reasons for his or her opinion." (Evid. Code, § 721, subd. (a).)

As we have recited, Acha opined on direct examination that defendant acted in accordance with his Front Sight training.

There was nothing improper about the prosecutor eliciting testimony from Acha that undermined that opinion and established that defendant, in fact, had not acted in accordance with all aspects of the Front Sight training. (Evid. Code, § 721.) Thus, it was entirely proper to elicit testimony from Acha that Front Sight taught that "the best gunfight [is] . . . one you avoid," and retreat is a " 'good idea and should be done if it is a viable alternative.' " In short, the prosecutor's cross-examination was directly related to Acha's testimony on direct and was appropriate impeachment.

Defendant secondly complains the prosecutor's closing argument "led the jury to impermissibl[y] impose a duty on appellant to retreat."

Where a misconduct claim is "based on the prosecutor's arguments to the jury, we consider how the statement would, or could, have been understood by a reasonable juror in the context of the entire argument." (*People v. Woods* (2006) 146 Cal.App.4th 106, 111.) "No misconduct exists if a juror would have taken the statement to state or imply nothing harmful." (*Ibid*.)

Anticipating that the defendant would rely on Acha's opinion that he had acted in accordance with his Front Sight training, the prosecutor, in her initial closing argument, referred to Acha's testimony on cross-examination and enumerated all the ways in which defendant had not followed all Front Sight recommendations, including attempting to avoid the use of deadly force when possible, of presenting the fire arm and warning the assailant, and of

7

retreating if that is a viable alternative. This was entirely permissible argument.

Moreover, prior to this enumeration, the prosecutor made a point of emphasizing the *legal* requirements set forth in the self-defense instruction previously given to the jury, stating: "I want to make one thing very clear. The self-defense jury instruction specifically tells you there is no legal duty to retreat. As the defense attorney established in jury selection, California is a stand-your-ground state. But that's different than what the training told defendant to do."

Accordingly, the prosecutor did not misstate the law or otherwise commit misconduct. On the contrary, she made a point of reinforcing the law on self-defense, and then preemptively took issue with Acha's expert opinion that defendant had acted in accordance with his defensive handgun training.

***No Prejudice***

Finally, even if defendant had preserved the misconduct issues (which he did not), and even if the prosecutor had committed misconduct (which she did not), defendant cannot demonstrate that any prosecutorial misconduct was prejudicial as it is not reasonably probable that a result more favorable to defendant would have occurred absent the claimed misconduct. (See *People v. Castillo* (2008) 168 Cal.App.4th 364, 386.) Indeed, even if the asserted misconduct was so egregious it violated defendant's federal constitutional right to due process (which it was not), any error was harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18.)

As we have recited, the jury was correctly instructed that "A defendant is not required to retreat. He is entitled to stand his ground and defend himself even if safety could have been achieved by retreating." The prosecutor not only did not take issue with this instruction, she pointed out

8

that the law differed from the defensive firearm training defendant took. Defense counsel, in turn, had full opportunity to emphasize the controlling law and argue the evidence.

The jury was also instructed, "Nothing that the attorneys say is evidence"; "[i]f you believe that the attorneys' comments on the law conflict with [the court's] instructions, [the jury] must follow [the court's] instructions"; and neither an attorney's questions nor statements during closing arguments are evidence. (See CALCRIM Nos. 104, 200, 222.) Absent compelling evidence to the contrary (of which there is none here), we must presume the jury followed the instructions given. (*People v. Cain* (1995) 10 Cal.4th 1, 34, overruled on another ground in *People v. Moon* (2005) 37 Cal.4th 1, 17.)

Finally, overwhelming evidence supports the verdict. While defendant points to evidence that Neighbor was a large man who was intoxicated and carrying a walking stick—which defendant asserts was "more powerful in terms of force than [his] gun"—and came within "four to seven feet" of defendant in an "aggressive stance," the evidence was undisputed that defendant was facing *away* from Neighbor at the time Neighbor approached him. It is also undisputed that Neighbor asked, " 'Hey, are you all right,' " which was not aggressive behavior. Yet, defendant, without displaying his firearm or warning Neighbor to stop or back off, "turned around and shot him twice." In short, there was no evidence defendant observed Neighbor at all prior to turning and shooting him. In sum, the evidence overwhelming supports the jury's rejection of defendant's claim that he reasonably believed he was in imminent danger of being killed or suffering great bodily injury.

## DISPOSITION

The judgment is affirmed.

_____

Banke, J.

We concur:

_____

Margulies, Acting P.J.

_____

Sanchez, J.

A157211, People v. Wilson

1