Filed 6/9/23 P. v. Pelayo CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F084856 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 21CMS5553A) |
| STEVEN LOPEZ PELAYO, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

### THE COURT\*

APPEAL from a judgment of the Superior Court of Kings County. Kathy Ciuffini, Judge.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Kathryn L. Althizer, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Poochigian, Acting P. J., Franson, J. and DeSantos, J.

Defendant Steven Lopez Pelayo was convicted by a jury of making criminal threats, possession of a firearm by a felon, and exhibiting a deadly weapon and using it in a fight. On appeal, he contends (1) the evidence was insufficient to support the findings that he had the specific intent to convey a threat and that he had the immediate ability to carry out the threat, and (2) the trial court erred in denying his motion for mistrial. The People disagree on both accounts. We affirm.

## PROCEDURAL SUMMARY

On May 2, 2022, the Kings County District Attorney filed a second amended information charging defendant with making criminal threats (Pen. Code, § 422, subd. (a);[1] count 1), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 2), exhibiting a deadly weapon in a threatening manner and using it in a fight (§ 417, subd. (a)(1); count 3), and possession of drug paraphernalia (Health & Saf. Code, § 11364, subd. (a); count 4). As to count 1, the amended information alleged defendant personally used a firearm in the commission of the offense (§ 12022.5, subd. (a)). As to counts 1 and 2, the amended information further alleged that defendant was released on bail at the time of the offenses (§ 12022.1) and had suffered a prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), which also qualified as a serious felony conviction (§ 667, subd. (a)). The amended information also alleged three circumstances in aggravation: defendant had engaged in violent conduct that indicated a serious danger to society (Cal. Rules of Court, rule 4.421(b)(1)),[2] defendant had prior convictions as an adult or sustained petitions in juvenile delinquency proceedings that were numerous or of increasing seriousness (rule 4.421(b)(2)), and defendant had previously served a prior prison term (rule 4.421(b)(3)).

---

[1]     All further statutory references are to the Penal Code, unless otherwise noted.

[2]     All further rule references are to the California Rules of Court.

On May 4, 2022, the jury found defendant guilty on counts 1 through 3 and found true the firearm allegation on count 1, but found defendant not guilty on count 4. On the same date, in a bifurcated proceeding outside the presence of the jury, defendant admitted that the prior conviction and on-bail allegations were true. The jury trial was then reconvened, and the jury found true the three circumstances in aggravation.

On August 19, 2022, the trial court sentenced defendant to an aggregate term of 17 years as follows: on count 1, six years (the upper term of three years, doubled due to the prior strike conviction), plus a four-year firearm enhancement, plus a two-year on-bail enhancement, plus a five-year prior serious felony conviction enhancement; on count 2, six years (the upper term of three years, doubled due to the prior strike conviction), plus a two-year on-bail enhancement, both stayed pursuant to section 654; and on count 3, 180 days in jail, stayed pursuant to section 654.

On August 24, 2022, defendant filed a notice of appeal.

## FACTUAL SUMMARY

**The People's Case**

In November 2021,[3] G.M.[4] was an "animal doctor" or "animal scientist" at a dairy ranch in Hanford. Defendant was one of his coworkers. On November 12, G.M. sat in his vehicle[5] during his lunch break. Defendant arrived in a white van with another person that G.M. could not see. The windows were rolled down on the van. The van parked approximately 25 to 30 meters from G.M.'s vehicle. Defendant was seated in the front passenger seat of the van. G.M. saw that defendant was holding a handgun. Defendant said or shouted, "this 'is for Mr. Pepe,' " or " 'this is for Don Pepe,' " and made a

---

[3]     All further dates that do not specify a year refer to 2021.

[4]     G.M.'s full initials are J.J.G.M. We refer to him as G.M.

[5]     G.M. suggested that his vehicle was distinctive and "everybody recognize[d] [it]" because it was an "old fashioned vehicle and at [his] place of work there [was not] any other … like it."

movement consistent with chambering a round in a semiautomatic handgun.**6** Defendant then looked at G.M. while G.M. sat in his vehicle. G.M. understood that he was the "Don Pepe" to whom defendant referred because he was known by that name at the ranch where he worked, and defendant had called him " 'f***ing Pepe' " in the past. He understood defendant's words and conduct to be a threat of physical harm.

G.M. went to his manager and informed him of what happened. Defendant left the area in the van that he arrived in. G.M. was afraid to leave so he finished his shift. Approximately 30 minutes to an hour after G.M. resumed his shift, defendant arrived in a different vehicle with a woman G.M. did not recognize. Defendant carried a metal briefcase. Defendant and the woman approached G.M. and one of his coworkers and asked the coworker to "take them to a place … on the back side of the corral." G.M. knew that there were no cameras behind the corral. G.M. ran and hid among the livestock because he was afraid that defendant would kill him.

G.M. believed defendant would hurt him because he had reported defendant for bullying in the workplace several weeks prior—G.M. was kicked by an animal and defendant made fun of him—and defendant was reprimanded. Thereafter defendant made comments about wanting "to kill a paisa," "that he liked to get a gun and fire shots at paisas," and that he was carrying a gun in his backpack. G.M. explained that people from Mexico are "paisas" and he was from Mexico. G.M. had seen defendant from a distance when he showed others the gun he had in his backpack.

After November 12, G.M. did not return to work "because of the emotional distress [the incident] caused [him]." He ultimately lost his job as a result. G.M. further testified that he was afraid to come to court and he had been receiving therapy related to his fear.

---

**6** The trial court described the movement as "pull[ing] out his right hand, and it looked like he had his forefinger and his thumb in a circle, and then he took his left hand and moved it, held it up in that area, and pulled it to himself."

At approximately 1:31 p.m., on November 12, Kings County Sheriff's deputy Eddie Torres responded to the dairy ranch. He interviewed G.M. G.M. told Torres that he was afraid that defendant would shoot him, and Torres noticed that G.M. was shaking and appeared to be "nervous [and] afraid." G.M. directed Torres to a white sedan and told Torres that defendant was in the sedan. Torres approached the sedan and found defendant standing near the rear of the sedan on the passenger side. Defendant acknowledged to Torres that he was intoxicated. Torres searched the sedan and discovered a glass pipe for smoking methamphetamine on the floorboard near the back passenger seat and a nine-millimeter Luger round in the center console cupholder.

Defendant told Torres that he was not at the dairy ranch that morning. He said he had a court date at Kings County Superior Court at 8:15 a.m. that went until approximately 10:00 a.m. or 10:30 a.m. Thereafter, defendant began consuming alcohol. Defendant told Torres that he arrived at the dairy ranch in the white sedan while Torres was speaking with G.M. He denied having been to the dairy ranch earlier that day in a white van.

Defendant acknowledged that "he knew [G.M.], Pepe … [who] had told on [defendant] for intimidating him." Defendant was written up for the incident. Torres explained that he was dispatched to the dairy ranch in response to the prior bullying or harassment incident, which had occurred on October 8. G.M. reported defendant was "harassing him, calling everybody gay. [G.M.] called [law enforcement] because he was afraid. [Defendant] had made statements that he was a gang member and he had been previously convicted of a robbery and people were afraid of him[.]"

Torres obtained security footage from the dairy ranch. The video depicted that on November 12, at 11:06 a.m., defendant arrived as the passenger of a white van. He was

5.

wearing a blue, red, and white "square pattern shirt."[7]  As he sat in the van, he "pulled a firearm from his waistband with his right hand"; he then placed his right hand on top of the slide and pulled back "as though he was chambering … a round" or "clear[ing] the chamber."  Torres testified that the handgun appeared to be a real, operational firearm, and not a replica.  After a third person entered the van, it left.  Defendant did not exit the van at any point during that security video.  The video contained no audio and Torres was unable to determine from the video whether defendant made any statements.

T.S. worked at the same dairy ranch as G.M. and defendant.  When T.S. went to punch his timecard and take his lunch break, between 11:00 a.m. and 12:00 p.m., he saw defendant arrive in a van.  From about 20 feet away, T.S. heard defendant say, " 'it's for Pepe.' "  T.S. was not looking at defendant when defendant made the statement.  He did not know where G.M. was when defendant made the statement.  T.S. did not understand the statement to be a threat.  He thought it might have been a joke.  T.S. knew that people at the dairy ranch called G.M. by the name "Pepe."

## DISCUSSION

### 1.  Sufficiency of the Evidence

Defendant contends the evidence was insufficient to prove that he intended his conduct and the statement "this is for Pepe" to be understood as a threat or that there existed the immediate prospect of execution of the threat.  The People disagree, as do we.

#### A.  Standard of Review

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves.  Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the

---

**7**    Defendant was wearing the same clothing when Torres contacted him at approximately 1:31 p.m., on the same date.  However, Torres was not able to see defendant's face in the video.

defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] … We do not reweigh evidence or reevaluate a witness's credibility.' [Citations.] 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' " (*People v. Brown* (2014) 59 Cal.4th 86, 105–106; *People v. Friend* (2009) 47 Cal.4th 1, 41 [conflicts in the evidence are for the jury to resolve, and where a jury has credited statements by a witness, an appellate court can reject those statements only if they are physically impossible or facially false].)

"Where, as here, the jury's findings rest to some degree upon circumstantial evidence, we must decide whether the circumstances reasonably justify those findings, 'but our opinion that the circumstances also might reasonably be reconciled with a contrary finding' does not render the evidence insubstantial." (*People v. Earp* (1999) 20 Cal.4th 826, 887–888.) Further, if the record contains substantial evidence from which a reasonable trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt, "the possibility that the trier of fact might reasonably have reached a different conclusion does not warrant reversal." (*People v. Taylor* (2004) 119 Cal.App.4th 628, 639.)

### B. Analysis

Section 422 provides, in relevant part:

> "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement … is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby

7.

causes that person reasonably to be in sustained fear for his or her own safety … shall be punished by imprisonment  ….'' (§ 422.)

Defendant challenges the sufficiency of the evidence only as to two elements:  that (1) he intended the statement to be understood as a threat, and (2) that the threat was so clear, immediate, unconditional, and specific that it communicated to the victim a gravity of purpose and an immediate prospect of execution of the threat.

As to the first challenged element, any determination that the defendant intended his words to be considered a real and actual threat under section 422 can take into consideration all the circumstances existing at the time the threat was made. (*In re George T.* (2004) 33 Cal.4th 620, 630.)  Such threats must be " 'judged in their context.' " (*People v. Wilson* (2010) 186 Cal.App.4th 789, 807 (*Wilson*).)  "[I]t is the circumstances under which the threat [was] made that give meaning to the actual words used." (*People v. Butler* (2000) 85 Cal.App.4th 745, 753.)  Mere angry utterances or soliloquies are not enough unless they convey the threat of great bodily injury upon another. (*Wilson*, at pp. 805–806.)

" 'A threat is not insufficient simply because it does "not communicate a time or precise manner of execution, section 422 does not require those details to be expressed." [Citation.]' [Citation.]  In addition, section 422 does not require an intent to actually carry out the threatened crime.  [Citation.]  Instead, the defendant must intend for the victim to receive and understand the threat, and the threat must be such that it would cause a reasonable person to fear for his or her safety or the safety of his or her immediate family." (*Wilson*, *supra*, 186 Cal.App.4th at p. 806.)

Defendant argues that the evidence did not support a conclusion that he "made the statement and gesture with the firearm with the requisite specific intent or that [he] did anything to follow up on the statement …."  To the contrary, the evidence before the jury was that G.M. drove a vehicle that "everybody [at the dairy ranch] recognize[d]" because it was distinctive.  The van parked between 25 and 30 meters (roughly 82 to 98 feet) from

G.M.'s vehicle. Defendant removed a handgun from his waistband, made a motion like chambering a round, and said, "this is for Don Pepe." Defendant then looked toward G.M. Further, G.M. and defendant had a negative interaction in the preceding weeks where G.M. reported defendant for bullying, and defendant was reprimanded. Thereafter, defendant said in G.M.'s presence that he "wanted to kill a paisa." Because G.M. was from Mexico, he understood himself to be a "paisa." On that record, a reasonable jury could have concluded that defendant knew of G.M.'s presence, and made the statement "this is for Don Pepe" while chambering a round with the intent to convey a threat of great bodily injury or death to G.M.

Defendant's argument that he did nothing to follow up on the threat misses the mark. When defendant made the threat by chambering a round and making the statement, the jury reasonably could have concluded defendant intended that G.M. understand his words and conduct to be a threat. It was not necessary for defendant to have intended to or actually to have taken a further step toward physically harming G.M. for the jury to have concluded that defendant intended to convey a threat. (§ 422 ["even if there is no intent of actually carrying it out"]; *Wilson*, *supra*, 186 Cal.App.4th at p. 806.)

Defendant next contends that the threat was not a sufficiently immediate prospect of execution of the threat. He asserts that his statement in this case—"this is for Don Pepe"—is effectively equivalent to the insufficiently immediate statement in *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1137–1138—"I'm going to get you." In *Ricky T.*, the court found the statement to be "ambiguous on its face and no more than a vague threat of retaliation without prospect of execution." (*Id.* at p. 1138.) *Ricky T.* did not involve any display of a weapon and the court emphasized that "there was no evidence … to suggest that [the minor] and [the threatened person] had any prior history of disagreements, or that either had previously quarreled, or addressed contentious, hostile, or offensive remarks to the other." (*Ibid*.) Because defendant displayed a firearm

9.

along with the threat and chambered a round, because defendant and G.M. had prior negative interactions, and because defendant had previously talked about wanting to kill a "paisa," the threat in this case is not akin to the threat in *Ricky T.* Defendant appeared to have the means to immediately execute his threat to harm G.M. Indeed, the *Ricky T.* court made the same distinction, citing *People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1154–1157, where a defendant "was properly convicted for terrorist threats … because circumstances revealed other threats and defendant's possession of the means of accomplishing the threat[.]" *Ricky T.* is meaningfully distinct from this case. Here, based on the evidence in the record, a reasonable jury could have concluded that defendant's prior conduct, his threat, and his conduct in chambering a round conveyed the immediate prospect of execution of the threat.

### 2. Motion for Mistrial

Defendant contends Torres's testimony before the jury that G.M. told him defendant was a gang member, had a prior robbery conviction, and people at the dairy ranch were afraid of him, required the trial court to grant a mistrial. The People disagree. We agree with the People.

#### A. Additional Background

At trial, defendant's counsel asked Torres whether he had "followed up on" the "previous write up of [defendant] by his employer." Torres responded:

> "I was actually the officer that investigated that incident that occurred on October 8[], 2021. [G.M.] called to report harassment regarding [defendant] harassing him, calling everybody gay. [G.M.] called because he was afraid. [Defendant] had made statements that he was a gang member and he had been previously convicted of a robbery and people were afraid of him at work. And that he would—he was making fun of [G.M.] for a cow kicking him and calling him names, and he was afraid.
>
> "And he was also afraid because a month prior he had seen [defendant] show—pull a gun out of a gray backpack and show[] it to the coworkers. He then later on heard several rounds being fired. A coworker told [G.M.] that [defendant] had shot several rounds into a canal bank

10.

located at the cattle ranch. And that's why he called to report the initial incident."

Defense counsel did not object at the time the statement was made. However, at the next break in the proceedings, outside the presence of the jury, the attorneys and trial court engaged in the following discussion:

"[The Court]: [Defense counsel], there was … an answer given by … Torres regarding the prior incident and I think it was—

"[Defense Counsel]: The [section] 211?

"[The Court]: Yeah. And—

"[Defense Counsel]: I wanted to bring that up. [¶] … [¶]

"[The Court]: Yeah. And I—there was no objection. There was no—and so I wanted to know if you strategically had decided to just leave that alone? Or how do you—

"[Defense Counsel]: No, I—I was caught off guard and wasn't—I didn't necessarily want to object because I didn't want to seem like I was hiding it, but I do want to fix the problem and I'm not sure how to do that. [¶] … [¶] Because he doesn't have a [section] 211 conviction."

The trial court suggested giving a limiting instruction, instructing the jury to disregard that statement if the parties could reach a stipulation. The attorneys initially agreed that they would stipulate defendant had not been convicted of robbery and had never suffered any gang-related convictions. However, the parties further agreed the testimony that defendant had told G.M. that he was a gang member and had suffered a robbery conviction was relevant to G.M.'s fear of defendant for purposes of the criminal threats charge. The court concluded that the relevant issue was whether defendant had made the statements to G.M. regarding gang membership and having suffered a robbery conviction to intimidate G.M., not whether the statements were true. The court suggested that defense counsel could cross-examine G.M. regarding whether the statement was made, or defendant could testify that he had not made the statement, suffered a robbery conviction, or been a gang member.

11.

Out of the presence of the jury, defendant's counsel objected to the admission of the statement as nonresponsive and hearsay and asked that the response be stricken. He also argued that "the bell [could not] be un-rung" and moved for a mistrial. The trial court noted that no motion in limine had been made regarding the October 8 harassment incident. It denied the motion for mistrial but sustained the objection and admonished the jury not to consider Torres's statement. Specifically, the court read the question and answer and directed the jury not to consider the answer.

## B. Standard of Review

A motion for mistrial "should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction." (*People v. Hines* (1997) 15 Cal.4th 997, 1038; (*People v. Partida* (2005) 37 Cal.4th 428, 439 ["the admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial fundamentally unfair"] (italics omitted).) " ' "Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." ' " (*People v. Lucero* (2000) 23 Cal.4th 692, 714.) We review the trial court's denial of a motion for mistrial for abuse of discretion. (*People v. Ayala* (2000) 23 Cal.4th 225, 282.)

## C. Analysis

Although gang evidence in cases not involving gang enhancements is potentially prejudicial (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049), we presume that the jury followed the court's instructions and disregarded the single, fleeting reference to gang affiliation. (*People v. Boyette* (2002) 29 Cal.4th 381, 436.) "Juries often hear unsolicited and inadmissible comments and in order for trials to proceed without constant mistrial, it is axiomatic the prejudicial effect of these comments may be corrected by judicial admonishment; absent evidence to the contrary the error is deemed cured." (*People v. Martin* (1983) 150 Cal.App.3d 148, 163; see *People v. Franklin* (2016) 248 Cal.App.4th 938, 955 ["vague and fleeting references to a defendant's past

criminality to be curable by appropriate admonition to the jury"].) Because defendant cites nothing in the record indicating the jurors did not follow the court's admonitions and instructions, we assume that they did and that the error was cured. (See *People v. Abel* (2012) 53 Cal.4th 891, 925 [possible prejudice from brief reference to defendant's past gang affiliation was "dispelled by the court's admonition to the jury to disregard that portion of [the] testimony"]; *People v. Burgener* (2003) 29 Cal.4th 833, 875 [brief and isolated reference to uncharged crimes, followed by a clear admonition not to consider it for any reason, "did not irreparably damage defendant's chances of a fair trial"].)

Cases in which improper gang evidence has resulted in reversal, unlike this case, involve extensive testimony that had been improperly admitted, not an isolated remark by one witness that was stricken from the record. (See, e.g., *People v. Cardenas* (1982) 31 Cal.3d 897, 906; *People v. Ramirez* (2016) 244 Cal.App.4th 800, 821–822; *People v. Memory* (2010) 182 Cal.App.4th 835, 859; *People v. Albarran* (2007) 149 Cal.App.4th 214, 227–228.) Any potential prejudice from Torres's statement was cured by striking the testimony and the admonition that the jury not consider the statement. (*People v. Avila* (2006) 38 Cal.4th 491, 574.) Moreover, any prejudice that might have resulted from the jury hearing the testimony (and then the testimony having been stricken) was limited because G.M. also testified about the bullying incident, defendant's expressed intent to kill a "paisa," and G.M. having seen defendant chamber a round and say, "this is for Don Pepe." The conclusion that a single, fleeting, and stricken reference to gang status and a prior conviction did not render the trial fundamentally unfair was well within the trial court's discretion.

Defendant contends that Torres provided "intentional and false information" with the intent to prejudice defendant. We disagree with that characterization. Torres repeated the statement that defendant told G.M. and G.M. conveyed to Torres. While there was no evidence that defendant had been convicted of a gang-related offense or

13.

robbery at the time the statement was made, as the trial court noted, if the victim's statement to Torres was to be believed, defendant had made the statement to intimidate G.M. Although defendant had no known gang connection and had not been convicted of robbery, defendant's attempts to intimidate G.M. were relevant issues at trial and Torres had reason to believe that defendant made the statement to G.M. This is not a situation in which an intentionally false statement prejudiced defendant and compelled a mistrial. (Cf. *People v. Woods* (2006) 146 Cal.App.4th 106, 112–114 [improper uncorrected vouching by a prosecutor that evidence of police misconduct "d[id not] exist" could not be reconciled with due process].) We find no error.

## DISPOSITION

The judgment is affirmed.